STATE of Wisconsin, Plaintiff-Respondent,

v.

Willie M. McDOUGLE, Defendant-Appellant.†

Court of Appeals

*No. 2011AP2852–CR. Submitted on briefs November 6, 2012.
—Decided March 5, 2013.*

2013 WI App 43

(Also reported in 830 N.W.2d 243.)

† Petition for Review Filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark S. Rosen* of *Rosen & Holzman*, of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. CURLEY, P.J.   Willie M. McDougle appeals the judgment convicting him of first-degree intentional homicide while armed, contrary to Wis. Stat. §§

940.01(1)(a) and 939.63 (2007–08),[2] and being a felon in possession of a firearm, contrary to WIS. STAT. § 941.29(2)(a). He also appeals the order denying his postconviction motion. McDougle argues that trial counsel was ineffective for failing to object to testimony concerning the victim's cause of death given by a medical examiner who was in the room while the victim's autopsy was being performed but who did not actually conduct the autopsy, as well as the admission of reports that the testifying examiner relied upon in drawing his conclusions, but did not personally create. McDougle also argues that trial counsel was ineffective for failing to object to the introduction of evidence that he had previously committed two felonies after he refused to stipulate to having been convicted of one felony for the purpose of proving the felon in possession charge. For the reasons explained herein, we affirm.

## BACKGROUND

¶ 2. McDougle was charged with two counts: first-degree intentional homicide while armed, and being a felon in possession of a firearm. The complaint alleged that McDougle shot and killed Larry E. Ponder during a bar fight at Diamonds Pub in Milwaukee on October 26, 2007.

¶ 3. McDougle pled not guilty to both charges and trial commenced on January 5, 2009. At trial, numerous witnesses testified on the State's behalf, including two who saw McDougle shoot Ponder and two who saw McDougle holding a gun or something that looked like a gun during the time of the shooting. McDougle's theory of the case, as evidenced by his attorney's

---

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

opening statement, was that someone else shot Ponder. McDougle did not testify at trial.

*Victim Autopsy Evidence*

¶ 4. At trial, assistant medical examiner Dr. Christopher Poulos testified on the State's behalf. Dr. Poulos testified that he had been present for Ponder's autopsy, but had not actually performed it. Instead, Dr. Jeffrey M. Jentzen, who was the Milwaukee County Medical Examiner at the time of the homicide, performed the autopsy and wrote the autopsy protocol.[3]

¶ 5. Dr. Poulos concluded that Ponder died from blood loss resulting from multiple gunshot wounds. In forming his conclusions, Dr. Poulos reviewed Dr. Jentzen's autopsy protocol as well as the photographs taken during the autopsy, the autopsy head and body diagrams, the x-rays in the file, the toxicology report, and the crime scene summary. Dr. Poulos testified that he reached his own independent opinion on the direction of the entrance and exit wounds. Also, while Dr. Poulos' opinions coincided with Dr. Jentzen's on some matters, they differed on others. For example, Dr. Poulos disagreed with Dr. Jentzen's opinion that one of the victim's wounds resulted from intermediate range gunfire. In his independent review of the autopsy photographs, Dr. Poulos did not observe the "stippling on the skin which is indicative of intermediate range fire."

¶ 6. Trial counsel did not object to Dr. Poulos' testimony, nor did counsel object to admission of Dr. Jentzen's autopsy protocol and body diagrams.

---

[3] It appears that Dr. Poulos testified because at the time of trial Dr. Jentzen was no longer the Milwaukee County medical examiner and was employed as a professor at the University of Michigan.

*Evidence of Prior Convictions*

¶ 7.   On the first day of trial, trial counsel indicated that the State had provided him with a stipulation concerning the felon in possession of a firearm charge.[4] The proposed stipulation was an admission that McDougle had a prior felony conviction.[5] Although trial counsel explained to McDougle that, absent a stipulation, the State could tell the jury that he had been convicted of two prior felonies and the jury would find out that those felonies were for armed robbery and recklessly endangering safety, McDougle refused to stipulate.

¶ 8.   The trial court conducted a colloquy with McDougle to ensure that he understood that if he did not stipulate the State would be able to "tell the jury about these two specific felony convictions." The following exchange occurred:

> [TRIAL COUNSEL]:   I did discuss with Mr. McDougle the possibility of stipulating to the second element of the [felon in possession of a firearm] offense . . . that he's previously been convicted of a felony. I presented a draft stipulation for Mr. McDougle for his signature.
>
> I explained to him that it was to his advantage to not have the felony conviction named to the jury, [and] that if he did not stipulate . . . the jury then would be given the name and case number of the previous felonies that he's been convicted of, armed robbery and endangering – recklessly endangering safety . . . .

---

[4] The elements of being a felon in possession of a firearm are (1) the defendant possessed a firearm; and (2) the defendant had been previously convicted of a felony. *See* WIS JI—CRIMINAL 1343 (2011); *see also* WIS. STAT. § 941.29.

[5] According to McDougle, the proposed stipulation stipulated to two felonies. However, our review of the record reveals that the stipulation referred to only a single felony.

I've explained to Mr. McDougle that it is to his benefit to . . . stipulate to the fact of the prior felony, that it was not to his benefit to have these convictions actually named to the jury because they could prejudice the jury.

Mr. McDougle, however, has trust issues regarding the stipulation, and despite my efforts to explain it to him, he believes that somehow by signing this he's admitting to possessing a firearm . . . .

THE COURT:   All right. Mr. McDougle, your attorney has indicated he's talked to you about . . . where it might not be in your best interests to have the jury know that you have the prior conviction for first-degree recklessly endangering safety while using a dangerous weapon and the armed robbery.

Now, I will tell you that I don't think it would bode well for you to have the jury hear that; however, it is your decision as to whether or not you want to hold the State to [its] burden to prove the second element, and the second element of the possession of a firearm by a felon [charge] is that you were convicted and you were – have a felony conviction . . . .

Do you understand that if you decide to have the State prove it, then they're going to be able to tell the jury about these two specific felony convictions? Do you understand that, sir?

THE DEFENDANT:   Yes, sir, I do.

THE COURT:   And do you prefer to do that?

THE DEFENDANT:    Yes, sir, I do.

THE COURT:   Do you want any more time to talk with your attorney about this?

THE DEFENDANT:   No, sir, I don't.

. . . .

309

THE COURT: Mr. McDougle, you have a copy of the stipulation?

THE DEFENDANT: Yes, sir, I have [a] copy from my attorney.

THE COURT: Okay, So you've had a chance to read that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: And you can read and write?

THE DEFENDANT: Yes, sir . . . .

[TRIAL COUNSEL]: And, Judge, for the record . . . I've recommended to my client that he stipulate to this fact, and, in some matters of trial strategy, I can overrule my client's strategy; however, since this is an element of the offense, I cannot overrule his decision, but he does have a right to force the State to prove every element of the crime he's charged with, and so my hands are tied as far as the stipulation is concerned, and I've explained it to Mr. McDougle as best I can, and I don't think his decision is a wise one, and he knows that, but clearly he stated on the record and to me that this is his decision . . . .

THE COURT: Now, Mr. McDougle, do you have any questions about the decision that you've made?

THE DEFENDANT: No, sir, I do not.

(Some capitalization added and formatting altered.)

¶ 9. Additionally, prior to presenting evidence of the two convictions at trial, the State proposed limiting the prejudice to McDougle by referencing the case number rather than the type of offense:

Judge, this is a cautionary matter. The next witness I'm going to call is going to be referencing the Defendant's two prior felony convictions. My intent in order to—Obviously it's a necessary element of count 2

of the information, but to be able to minimize the excessive prejudice, what the State intends to do is ask the witness, in effect bring out the evidence that in Milwaukee County, circuit court case number 99CF00582 and 99CF005874 . . . without naming the specific felony of the statute that relates to it . . . .

I think that's a fair compromise as to diminish any excessive prejudice [to] the Defendant, yet being able to allow the State to prove up that element of the crime. And again the State agreed not to go into it unless the defense would open the door about the specifics or somehow challenge that we didn't mention the statute number or something like that at least at this point.

¶ 10. Trial counsel did not object to the State's introduction of two felonies to prove the felon in possession of a firearm charge. Indeed, trial counsel expressed appreciation for the State's efforts to reduce any prejudice to McDougle. Ultimately, the exhibits concerning McDougle's prior felonies were admitted into evidence.

*Conviction and Postconviction Proceedings*

¶ 11. The jury found McDougle guilty of both charges and he was sentenced. Following sentencing, McDougle filed a postconviction motion seeking a new trial or an evidentiary hearing on the basis that trial counsel was ineffective. Specifically, McDougle argued that trial counsel was ineffective for: (1) failing to object to Dr. Poulos' testimony and the admission of Dr. Jentzen's reports because Dr. Poulos did not conduct the victim autopsy; and (2) failing to object to the admission of two prior felony convictions when only one was necessary to prove the felon in possession charge. The trial court denied McDougle's motion, and McDougle now appeals.

311

¶ 12.   On appeal, McDougle challenges the trial court's refusal to hold an evidentiary hearing on his ineffective assistance of counsel claim. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) ("[I]t is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel."). In *State v. Allen*, 2004 WI 106, ¶¶ 12–24, 274 Wis. 2d 568, 682 N.W.2d 433, the Wisconsin Supreme Court reviewed the standard applied when defendants assert that they are entitled to a postconviction evidentiary hearing. Relying on *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996), and *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), the *Allen* court repeated the well-established rule:

> First, [courts] determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. This is a question of law that [appellate courts] review *de novo*. If the motion raises such facts, the circuit court must hold an evidentiary hearing. However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing.

*Id.*, 274 Wis. 2d 568, ¶ 9 (emphasis added; internal citations omitted).

¶ 13.   To succeed on this claim, McDougle must allege a *prima facie* claim of ineffective assistance of counsel, showing that trial counsel's performance was deficient and that this deficient performance was prejudicial. *See State v. Mayo*, 2007 WI 78, ¶ 33, 301 Wis. 2d

642, 734 N.W.2d 115; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, McDougle must show facts from which a court could conclude that trial counsel's representation was below objective standards of reasonableness. *See State v. Wesley*, 2009 WI App 118, ¶ 23, 321 Wis. 2d 151, 772 N.W.2d 232. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. The issues of performance and prejudice present mixed questions of fact and law. *See State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). Findings of historical fact will not be upset unless they are clearly erroneous, *see id.*, but the questions of whether counsel's performance was deficient or prejudicial are legal issues we review independently, *see id.* at 236–37. We further note that our scrutiny of trial counsel's performance "is highly deferential" because " '[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.' " *See State v. Maloney*, 2005 WI 74, ¶ 25, 281 Wis. 2d 595, 698 N.W.2d 583 (citation omitted; brackets in *Maloney*). Consequently, " '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *See id.* (citation omitted; brackets in *Maloney*).

¶ 14. McDougle raises the same issues as he did in his postconviction motion. He argues that trial counsel was ineffective for failing to object to Dr. Poulos' testimony and the admission of Dr. Jentzen's reports. He also argues that trial counsel was ineffective for failing to object to the State's introduction of evidence that he had previously committed two felonies.

*Trial counsel was not ineffective for failing to object to Dr. Poulos' testimony and the admission of Dr. Jentzen's reports.*

¶ 15. McDougle argues that trial counsel was ineffective for failing to object to Dr. Poulos' testimony and the admission of Dr. Jentzen's reports. McDougle argues that Dr. Poulos' testimony was inadmissible because Dr. Poulos did not conduct the victim autopsy, but instead "merely testified as to the opinions and findings of Dr. Jentzen." McDougle further argues that Dr. Jentzen's reports were inadmissible because, pursuant to *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), they were testimonial hearsay whose admission violated his Confrontation Clause rights. McDougle contends that counsel's failure to object to Dr. Poulos' testimony and Dr. Jentzen's reports was prejudicial because this evidence was material to the case, as it indicated the victim died from multiple gunshot wounds.

¶ 16. We disagree. We first observe that McDougle's briefing on this issue relies heavily on *Bullcoming*. *Bullcoming* was decided in June 2011, however, more than two years after McDougle's January 2009 trial. "The Sixth Amendment does not require counsel to forecast changes or advances in the law." *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993). Conse-

quently, we cannot analyze trial counsel's performance in the context of *Bullcoming*. *See Lilly*, 988 F.2d at 786; *see also State v. Thayer*, 2001 WI App 51, ¶ 14, 241 Wis. 2d 417, 626 N.W.2d 811 ("counsel is not required to argue a point of law that is unclear").

¶ 17.   Most importantly, trial counsel's decision not to object to Dr. Poulos' testimony or the admission of Dr. Jentzen's reports did not prejudice McDougle. Contrary to what McDougle argues, it is simply not true that without the testimony and reports at issue, "one could not conclude that the [victim's] death was a gunshot homicide." As noted, multiple witnesses testified that they saw McDougle fire several shots into the victim at close range. Indeed, one such witness testified that McDougle pointed the gun "straight into [the victim's] face," and shot him. (Some capitalization omitted.) Also, McDougle never challenged the victim's cause of death. Rather, his defense at trial was that he was not the person who shot the gun. Additionally, we note that the autopsy report did not identify the victim's assailant. In these circumstances, testimony and documentation confirming that the victim died of blood loss from gunshot wounds was unnecessary, its admission was harmless, and trial counsel's failure to object did not subject McDougle to prejudice. *See Strickland*, 466 U.S. at 694.

¶ 18.   Furthermore, we are not persuaded by McDougle's alternative argument that there is no need to demonstrate trial counsel's prejudice so long as there is a Confrontation Clause violation. McDougle refers us to the following passage from *Bullcoming* for this proposition:

[T]he [Confrontation] Clause does not tolerate dispensing with confrontation simply because the court be-

315

lieves that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination.

A recent decision involving another Sixth Amendment right—the right to counsel—is instructive. In *United States v. Gonzalez–Lopez*, 548 U.S. 140 (2006), the Government argued that illegitimately denying a defendant his counsel of choice did not violate the Sixth Amendment where "substitute counsel's performance" did not demonstrably prejudice the defendant. This Court rejected the Government's argument. "[T]rue enough," the Court explained, "the purpose of the rights set forth in [the Sixth] Amendment is to ensure a fair trial; but it does not follow that the rights can be disregarded so long as the trial is, on the whole, fair." If a "particular guarantee" of the Sixth Amendment is violated, no substitute procedure can cure the violation, and "[n]o additional showing of prejudice is required to make the violation 'complete.' " If representation by substitute counsel does not satisfy the Sixth Amendment, neither does the opportunity to confront a substitute witness.

In short, when the State elected to introduce [the] certification [of the expert who prepared it but did not testify], [that expert] became a witness [the defendant] had the right to confront. Our precedent cannot sensibly be read any other way.

*See id.*, 131 S. Ct. at 2716 (some formatting altered; some citations omitted; brackets in second paragraph in *Bullcoming*).

¶ 19.  Contrary to what McDougle argues, this passage does not stand for the proposition that a defendant need not prove prejudice in an ineffective assistance of counsel claim simply because there has been a Confrontation Clause violation. *See id.* In fact, *Bullcoming* was not an ineffective assistance of counsel

case; in *Bullcoming*, trial counsel objected to the errors taken up by the Supreme Court. *See id.* at 2712. The passage McDougle cites to explains—by analogizing to another Sixth Amendment case—why the State could not substitute the testimony of an expert who had actually performed or observed the test submitted at trial with testimony of a "surrogate" unless the expert who actually performed the test "is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." *See id.* at 2710, 2716. The *Bullcoming* court did not hold that the prejudice analysis was not applicable to Confrontation Clause violations. *See id.* at 2716. Thus, the prejudice analysis still applies here, *see State v. Weed*, 2003 WI 85, ¶ 28, 263 Wis. 2d 434, 666 N.W.2d 485 ("The determination of a violation of the confrontation clause 'does not result in automatic reversal, but rather is subject to harmless error analysis.' ") (citation omitted), and McDougle cannot successfully claim that trial counsel was ineffective without proving prejudice.

¶ 20.   In light of the foregoing, we conclude McDougle was not prejudiced by his attorney's failure to object to the evidence at trial, and we conclude—without deciding whether trial counsel's performance was deficient[6]—that trial counsel was not ineffective.

---

[6] Though we do not decide whether counsel's performance was deficient, we note that our supreme court addressed the issue McDougle raises in this appeal in *State v. Williams*, 2002 WI 58, 253 Wis. 2d 99, 644 N.W.2d 919. In *Williams*, the State introduced into evidence at trial a state crime lab report showing the substance in the defendant's possession at the time of arrest tested positive as cocaine base. *Id.*, ¶ 4. Because the State was unable to produce the analyst who performed the tests on the substance for testimony at trial, it instead presented the testimony of a crime lab unit leader who reviewed the analyst's results. *Id. Williams* held that:

*See Strickland*, 466 U.S. at 694, 697. Therefore, the trial court correctly denied McDougle's postconviction motion on this issue without a hearing. *See Allen*, 274 Wis. 2d 568, ¶ 9.

*Trial counsel was not ineffective for failing to object to the State's introduction of evidence that he had previously committed two felonies.*

¶ 21.   We turn next to McDougle's argument that trial counsel was ineffective for failing to object to the State's introduction of evidence that he had previously committed two felonies. McDougle argues that because the State required proof of only one felony conviction to prove the felon in possession charge, having the jury learn that he in fact had two convictions "created a reasonable probability of an atmosphere of aspersion and disrepute about the defendant as to convince the jury that he is a habitual lawbreaker who should be punished and confined for the general good of the community." McDougle argues that because the proof of the two felony convictions unfairly prejudiced him in front the jury, trial counsel was ineffective for failing to object. We disagree.

¶ 22.   With respect to any alleged deficiency, we note that McDougle points to no binding authority for

> [T]he presence and availability for cross-examination of a highly qualified witness, who is familiar with the procedures at hand, supervises or reviews the work of the testing analyst, and renders her own expert opinion is sufficient to protect a defendant's right to confrontation, despite the fact that the expert was not the person who performed the mechanics of the original tests."

*Id.*, ¶ 20.

the proposition that trial counsel was required to object to the introduction of the two felonies. Rather, he argues that cases from various federal circuits show that allowing more than one felony conviction to be introduced is unfairly prejudicial, and that trial counsel in this case should have recognized the unfair prejudice and objected. In McDougle's circumstances, however, that two convictions were admitted instead of one is simply not enough to show that trial counsel's performance was deficient. In fact, one of his cited cases is instructive on this point. *United States v. Collamore*, 868 F.2d 24 (1st Cir. 1989), *abrogated by United States v. Tavares*, 21 F.3d 1 (1st Cir. 1994), does not—as McDougle argues—stand for the proposition that the admission of more than one felony conviction is *always* impermissible. Rather, *Collamore* recognized that while "in the usual case, there is likely to be little need for evidence of more than one prior conviction," it is also true that "allowing evidence of more than one prior conviction may be within the trial court's discretion in some instances." *See id.*, 868 F.2d at 30. We think this is one such instance. As noted, trial counsel made every effort to explain the effect of the proposed stipulation and likely did not object to the State's proposed introduction of the two felonies because the State took great care to introduce them in a way that proved the element of the felon in possession charge without unfairly prejudicing McDougle. Under these circumstances, we cannot conclude that trial counsel's performance was deficient. *See Wesley*, 321 Wis. 2d 151, ¶ 23.

¶ 23.    In addition, McDougle does not demonstrate that trial counsel's failure to object to the admission of both felonies prejudiced him. Again, we find one of McDougle's cited cases instructive. Although the court

in *United States v. Weiland*, 420 F.3d 1062 (9th Cir. 2005), found it improper to admit four felony convictions to prove the defendant was a felon in possession of a firearm, *see id.* at 1078, it nevertheless upheld the defendant's convictions, concluding that the jury would have reached the same verdict "even absent the erroneously admitted superfluous convictions," *see id.* at 1079. This conclusion directly applies to McDougle's case. As noted, evidence of McDougle's guilt was overwhelming, and included the eyewitness testimony of individuals who saw McDougle shoot Ponder at a close range. That the jury knew that McDougle had been convicted of one felony as opposed to two in these circumstances— particularly given the fashion in which the felonies were introduced—did not, as McDougle argues, create "an atmosphere of aspersion and disrepute so as to convince the jury that [he] was a habitual lawbreaker who should be punished." Consequently, McDougle has not shown prejudice, his ineffective assistance of counsel claim as to this issue fails, *see Strickland*, 466 U.S. at 694, and the trial court correctly denied McDougle's postconviction motion on this issue without a hearing, *see Allen*, 274 Wis. 2d 568, ¶ 9.

¶ 24.  In sum, having concluded, for the reasons stated above, that McDougle has not made a *prima facie* showing that trial counsel's performance was ineffective, we must also conclude that the trial court correctly denied McDougle's motion for a postconviction hearing. *See id.*; *Mayo*, 301 Wis. 2d 642, ¶ 33. The order and corresponding judgment of conviction are therefore affirmed.

*By the Court.*—Judgment and order affirmed.