In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1314

KEITH A. LEE,

*Petitioner-Appellant,*

*v.*

BRIAN FOSTER,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 1:10-cv-00040 — **William C. Griesbach**, *Chief Judge.*

ARGUED OCTOBER 29, 2013 — DECIDED APRIL 28, 2014

Before WOOD, *Chief Judge*, and KANNE and HAMILTON,
*Circuit Judges.*

KANNE, *Circuit Judge.* Keith Lee filed a petition for a writ of
habeas corpus in the United States District Court for the
Eastern District of Wisconsin. The district court denied the
petition, but certified three issues for appeal: (1) whether an in-
court identification of Lee violated his rights to due process; (2)
whether an adequate and independent state ground precluded
consideration of Lee's claim for ineffective assistance of

counsel; and (3) whether admission of an out-of-court state-
ment at trial violated his Sixth Amendment right to confront
witnesses. We affirm.

## I. BACKGROUND

Lee was tried and convicted of the first-degree reckless
homicide of Joshua Meyers along with two counts of armed
robbery. The government presented evidence that he and
Victor Thomas traveled to Meyers's residence in Oshkosh,
Wisconsin to collect a drug debt. Four people were present
when Thomas and Lee arrived: Meyers's half-brother Kristop-
her Johnston, Meyers's friend Ceilya Paez, Paez's two-year-old
daughter, and Meyers. Soon after their arrival, a fight broke
out, at which point Lee pulled a gun and shot Meyers in the
abdomen. Meyers died shortly after being shot.

Lee and Thomas left the apartment and drove to Milwau-
kee where they met with Christopher Johnson. Johnson drove
Lee and Thomas to a gas station and then dropped Lee off at
a street corner in Milwaukee. Shortly thereafter, Johnson and
Thomas were pulled over by Milwaukee police and arrested.
Lee was apprehended in Chicago approximately one month
later.

Lee was found guilty following a five-day jury trial. He
appealed his conviction, which was affirmed by the Wisconsin
Court of Appeals. Lee then filed a postconviction motion with
the Wisconsin circuit court, which was denied. The Wisconsin
Court of Appeals affirmed and the Wisconsin Supreme Court
denied further review. He then filed a petition for a writ of
habeas corpus with the district court, which denied the petition

but certified three issues for appeal. We will address each in turn.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, permits habeas relief only if the state-court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). When reviewing a petition for a writ of habeas corpus, "we review the district court's findings of fact for clear error and its rulings on issues of law *de novo*." *Bintz v. Bertrand*, 403 F.3d 859, 865 (7th Cir. 2005) (quoting *Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001)). As all three of Lee's claims involve issues of law, our review of the district court's ruling is *de novo*.

### A. Identification Procedure

Lee first challenges the in-court identification by Christopher Johnson. Eleven days before Lee's trial, the police showed Johnson a photo array, which included pictures of both Victor Thomas and Lee. Johnson was not able to pick out Lee's photo from the lineup,—though he was able to identify Thomas—but told detectives that he could identify the man he gave a ride if he saw him in person. In return for his testimony against Lee, the detectives told Johnson that they would testify on his behalf in his unrelated trial.

At trial, Johnson testified to the extent that he knew Lee. He stated that though he had seen Lee "a couple of times … I never shook hands or none of that like that" and that he would be able to recognize him if he "saw him today." Thereafter, Johnson identified Lee as the man in the courtroom who, while riding with Thomas and himself, admitted "pop[ping]" a "guy" in Oshkosh on the night of January 10, 2006.

On cross-examination, Johnson stated:

> Q. So you knew that you were going to be able to say I'm going to look at the defense table and I'm going to point to the African American and that's going to be the guy; isn't that correct?
>
> A. Basically, yeah.

Lee argues that this statement proves that Johnson identified Lee solely on the basis of his race. He alleges that this fact, coupled with Johnson's inability to identify Lee in the photo array and the favorable testimony received from detectives at his own trial, constitutes an impermissible identification procedure.

We have held that a "witness's identification violates a defendant's right to due process when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States v. Recendiz*, 557 F.3d 511, 524 (7th Cir. 2009) (internal quotation marks omitted). Yet "the admission of evidence rarely implicates due process," as courts typically rely on other means—such as the Sixth Amendment rights to counsel and confrontation—to safeguard the reliability of

evidence. *United States v. Sanders*, 708 F.3d 976, 983 (7th Cir. 2013). Due process will only prohibit evidence when it "is so extremely unfair that its admission violates fundamental conceptions of justice." *Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). In determining whether an identification procedure reaches this substantial threshold, we engage in a two-pronged analysis. First, we determine whether the identification procedure was suggestive and unnecessary. *Sanders*, 708 F.3d at 984–85. Second, we determine under the totality of the circumstances whether the procedure was nonetheless reliable. *Id.*

Lee's assertion that Johnson was aware that Lee would be the African-American at the defense table is neither suggestive nor unnecessary. We have noted that "a defendant's mere presence at the defense table is not enough to establish a violation of due process." *Recendiz*, 557 F.3d at 525; *see also United States v. Bush*, 749 F.2d 1227, 1232 (7th Cir. 1984). There is nothing in the record to establish that Johnson's identification was made solely on the basis of Lee's race or that Johnson was instructed to point to the African-American man at the defense table. Rather, Johnson was simply testifying to his knowledge of the situation at hand: he had seen Lee, an African-American, on several occasions and was aware that he was testifying at Lee's trial. While the question itself may seem fairly suspect, it does not itself establish any wrongdoing that might implicate due process. Similarly, Johnson repeatedly admitted that he was unable to pick out Lee's picture in the photo array, but could identify Lee if he saw him in person. The fact that Johnson was not able to select Lee's photo may

tend to discredit Johnson's testimony, but this is not our concern, for examining the accuracy of the identification falls within "the exclusive province of the jury." *Recendiz*, 557 F.3d at 524. Johnson's testimony took place in front of the jury, "which observed and presumably weighed any arguably suggestive circumstances." *Id*. at 526; *see also Johnson v. McCaughtry*, 92 F.3d 585, 597 (7th Cir. 1996) (though an in-court identification may not be "especially convincing," that does not render it inadmissible; the ultimate accuracy of the identification is to be determined by the jury as the trier of fact). Our role is only to determine whether an identification is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Neither the in-court identification nor the photo array meet this threshold.

Even if we found Johnson's identification procedure to be unnecessarily suggestive, however, it was nonetheless reliable under the circumstances. The Supreme Court set forth several factors for courts to use to determine whether an unduly suggestive identification procedure was still to be considered reliable under the circumstances: (1) the opportunity of the witness to observe the criminal at the time of the crime (or prior to the identification); (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

Applying the factors to Johnson's testimony, we find it was sufficiently reliable to be admitted at trial. First, Johnson

testified that he was in the car with Victor Thomas and Lee after the shooting and drove the two men around before dropping Lee off on a Milwaukee street corner. He also stated that at one point, he and Lee were alone in the vehicle and had a brief discussion. Second, Johnson did admit that he was not paying particular attention to Lee or the backseat where Lee was located. As to the third factor, Johnson did not provide a prior description of Lee, but did testify that he had seen Lee driving around on several occasions. And while he could not pick him out in the photo lineup, he repeatedly stated that he would be able to identify Lee if he saw him in person. Fourth, Johnson confirmed that he was "sure" that the man who was in the car with him and Victor Thomas the night of the shooting was in fact Keith Lee. Finally, over nine months had passed between the shooting and the in-court identification.

Considering all of the factors, we do not find this testimony to be unreliable. Although Johnson's lack of attention to Lee on the night of the shooting and the extended duration of time between their initial encounter and the identification raise some concern, the testimony was nonetheless constitutionally reliable when considered with the other *Biggers* factors. Certainly Johnson's testimony was not received without some flaws, as is most evidence that is properly examined, but these are issues for the jury to decide in weighing any questionable discrepancies. *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) ("[E]vidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.") Accordingly, we find no error.

*B. Ineffective Assistance of Counsel*

Lee also contends that he is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. Lee's counsel appealed his conviction, which was affirmed by the Wisconsin courts, but did not raise a claim of ineffective assistance of trial counsel.[1] Thereafter, Lee filed his postconviction motion for ineffective assistance of both trial and appellate counsel. Lee argued that his trial counsel's investigation into his alibi was deficient and that his attorney failed to explain why he could not present both the alibi and credibility arguments at trial. He also asserts that his appellate counsel was ineffective in failing to raise the effectiveness claim in his direct appeal and should have discerned such an obvious claim from the record.

The Wisconsin Court of Appeals denied Lee's motion for postconviction relief. It found that the allegations regarding his postconviction counsel's performance were conclusory and legally insufficient under the rule set forth in *State v. Allen*, 682 N.W.2d 433 (Wis. 2004). The court also held that Lee's motion was barred by the Supreme Court of Wisconsin's ruling in *State v. Escalona-Naranjo*, which holds that all issues not raised in a previous postconviction motion or appeal are foreclosed from being brought up in a subsequent postconviction motion unless the petitioner can demonstrate "sufficient reason" for the delay. 517 N.W.2d 154, 162 (Wis. 1994).

---

[1] Lee's appellate counsel challenged the (1) in-court identification of Lee by Christopher Johnson and (2) whether Johnson's testimony about a conversation that occurred between Thomas and Lee constituted inadmissible hearsay.

The district court affirmed the decision, finding that, while the motion was not barred on *Escalona-Naranjo* grounds, it was nonetheless procedurally defaulted because he did not allege sufficient facts to entitle him to relief.

A claim will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). Accordingly, we will not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court "is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). An independent state ground will be found "when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012) (citing *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)). A state law ground is adequate "when it is a firmly established and regularly followed state practice at the time it is applied." *Id.*

The Wisconsin Court of Appeals relied on the Wisconsin Supreme Court's rule set forth in *State v. Allen*—which governs when a petitioner asserts that he is entitled to an evidentiary hearing—as its basis for denying Lee's motion. The court stated, "A WIS. STAT. § 974.06 motion must offer more than conclusory allegations to be legally sufficient. *See Allen*, 274 Wis. 2d 568, ¶12. We agree with the circuit court that Lee's allegations of postconviction counsel's ineffectiveness were conclusory … . The motion was not sufficient under *Allen*."

This rule clearly served as an independent basis for the court's denial of Lee's motion.

Lee argues that the application of *Allen* by the Wisconsin Court of Appeals cannot be found to be an adequate ground for denying relief. The rule requires a petitioner to provide sufficient material facts, "*e.g.*, who, what, where, when, why, and how-that, if true, would entitle him to the relief he seeks." *Allen*, 682 N.W.2d at 436. Lee contends that the level of specificity in his postconviction motion—as an incarcerated defendant who was purportedly represented by ineffective counsel at both the trial and appellate levels—should be sufficient to withstand review under the *Allen* rule. Yet our review of the adequacy of a state ground is limited to whether it is a firmly established and regularly followed state practice at the time it is applied, not whether the review by the state court was proper on the merits. And the *Allen* rule is a well-rooted procedural requirement in Wisconsin and is therefore adequate. *See, e.g., State v. Negrete*, 819 N.W.2d 749, 755 (Wis. 2012)*; State v. Balliette*, 805 N.W.2d 334, 339 (Wis. 2011); *State v. Love*, 700 N.W.2d 62, 68–69 (Wis. 2005); *State v. McDougle*, 830 N.W.2d 243, 247–48 (Wis. Ct. App. 2013). Consequently, we find the state procedural requirement relied upon by the Wisconsin Court of Appeals both independent and adequate. Lee's ineffective assistance claim is procedurally defaulted.

We can excuse a procedural default if a petitioner is able to show both cause and prejudice or that failure to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Lee, however, does not make an argument for either and we will not make it for him here. *See Franklin v. Gilmore*, 188 F.3d 877, 884–85 (7th Cir. 1999).

*C. Hearsay*

Lee also contends that Johnson's testimony about a conversation between Thomas and Lee violated his rights under the Confrontation Clause of the Sixth Amendment. The prosecutor asked Johnson about a conversation that occurred while driving to the gas station:

> Q: After you spoke with Victor Thomas, did you get back in the car and speak again with Keith Lee?
>
> A:  No, I didn't speak to anybody when I got back in the car. Victor Thomas was speaking.
>
> Q: *Do you remember Victor ever telling Keith to say what happened?*
>
> A: *He sort of asked him to confirm it.*
>
> Q: Did Keith Lee say anything to you about what happened in Oshkosh?
>
> A: Not exactly. He just mumbled yeah, yeah, like that.

(emphasis added). Lee argues that the italicized statement is "non-testimonial hearsay that lacks the indicia of reliability" and was admitted in violation of his rights under the Sixth Amendment. The Sixth Amendment ensures that an accused maintains "the right … to be confronted with witnesses against him." U.S. Const. amend. VI. But this right under the Confrontation Clause is limited to evidence that is "testimonial." *Davis v. Washington*, 547 U.S. 813, 821 (2006); *United States v. Ellis*, 460 F.3d 920, 923 (7th Cir. 2006) ("Hearsay evidence that is

nontestimonial 'is not subject to the Confrontation Clause.'" (citing *Davis*, 547 U.S. at 821)). Thus, because the testimony by Thomas was nontestimonial (as Lee concedes in his brief), the Confrontation Clause does not apply and Lee's Sixth Amendment claim must fail.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court.

HAMILTON, *Circuit Judge,* concurring in part and concurring in the judgment.

I join all portions of Judge Kanne's opinion for the court except Part II-A, dealing with Christopher Johnson's in-court identification of petitioner Lee as the person in his car on the night of the murder and robbery. Johnson admitted on cross-examination that he knew he would be asked to identify the man who was in his car that night, and that he expected to look at the defense table and point to the only African-American at that table.

As Judge Kanne points out, "a defendant's *mere* presence at the defense table is not enough to establish a violation of due process." Slip op. at 5 (emphasis added). Nevertheless, we have often recognized the inherent suggestiveness of in-court identifications where the defendant is seated at the defense table. See, e.g., *Johnson v. McCaughtry*, 92 F.3d 585, 597 (7th Cir. 1996) ("much less reliable than fair line-ups and photo arrays"); *Rodriguez v. Peters*, 63 F.3d 546, 556 (7th Cir. 1995) (in-court procedure was suggestive, but no due process violation if defendant's location is only suggestive circumstance); *United States ex rel. Haywood v. O'Leary*, 827 F.2d 52, 59 (7th Cir. 1987) (totality of circumstances kept in-court identification from being unreliable or violating due process); *United States v. Bush*, 749 F.2d 1227, 1232 (7th Cir. 1984) (recognizing suggestiveness but finding no due process violation where defendant's location was only suggestive circumstance). Our colleagues in the Second Circuit have addressed the problem in greater depth. See, e.g., *United States v. Archibald*, 734 F.2d 938, 941–42 (2d Cir. 1984) (in-court identification of defendant, the only black person in the courtroom, seated at the defense table, was

improperly suggestive, but error was harmless); *United States v. Brown*, 699 F.2d 585, 593–94 (2d Cir. 1983) (describing appropriate protective measures for in-court identification where witness has not made prior identification).

Johnson's troubling admission that he planned to point out the only African-American at the defense table suggests there was no independent basis for his identification. The fact that he was not able to identify Lee from photographs before trial strengthens that suggestion. The combination of (a) the inherent suggestiveness of an in-court identification of the defendant at the defense table, (b) Johnson's inability to make an earlier identification, and (c) his remarkable admission that he planned to identify the African-American at the defense table raises a substantial question about whether the identification was sufficiently reliable to be admitted, even though its flaws were fully aired before the jury. See generally *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).

Our cases have yet to address whether and when a witness's open admission that he identified the defendant based on his race and location in the courtroom would indicate "a very substantial likelihood of irreparable misidentification" that might violate due process. *Johnson*, 92 F.3d at 595, quoting *Biggers*, 409 U.S. at 198. In light of the circuit court cases cited above, among others, I do not know how I would decide that question if this were a direct appeal from a federal criminal trial. But that is not the question we must decide.

The question before us is limited by the highly deferential standard of review we apply to the state court's decision under the Antiterrorism and Effective Death Penalty Act of 1996. The

issue is not whether the admission of Johnson's identification violated the United States Constitution. The issue is only whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). An unreasonable application of federal law is different from a merely incorrect application of law, see *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011), citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000), for § 2254(d)(1) gives state courts considerable latitude in applying federal law as determined by the Supreme Court.

In the district court, Chief Judge Griesbach explained persuasively why the state court's decision here would not justify relief under § 2254(d)(1). See *Lee v. Baenen*, No. 10-C-040, 2013 WL 364226, at *3 (E.D. Wis. Jan. 30, 2013). Petitioner Lee has not rebutted that analysis with Supreme Court authority. To the extent that Part II-A of my colleagues' opinion seems to apply a less deferential standard, one closer to a direct appeal from a federal conviction, it says more than is necessary. On the basis of the district court's analysis, though, I agree with my colleagues that we must affirm the denial of habeas corpus relief based on the in-court identification by Johnson.