COURT OF APPEALS
DECISION
DATED AND FILED

**May 16, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1982-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF4946

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

QUARTEZ D. COLEMAN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JOSEPH R. WALL and GLENN H. YAMAHIRO, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Quartez D. Coleman appeals from a judgment entered following a jury trial convicting him of one count of trafficking a child, and an order denying postconviction relief.[1]  On appeal, Coleman contends that trial counsel was ineffective for failing to object to the trafficking a child jury instruction and failing to request a unanimity instruction.  Coleman also contends that trial counsel was ineffective for failing to sufficiently object to testimony that Coleman and the victim, S.H., had a sexual relationship, or in the alternative, that the trial court erred in admitting the evidence that Coleman had a sexual relationship with S.H.  For the reasons discussed below, we reject Coleman's arguments and affirm.

## BACKGROUND

¶2    According to the criminal complaint, on August 1, 2018, police received information from a youth care worker at the Lad Lake Residential Campus that a resident of the facility, fifteen year-old S.H., disclosed that she had been a victim of sex trafficking in Milwaukee days earlier.

¶3    Police spoke with S.H., who indicated that she had met with Coleman when she was temporarily residing at the St. Rose group home in Milwaukee.  Coleman pulled up outside the group home and asked if she needed a ride.  S.H. got in the car and they drove and talked.  They exchanged Facebook information and Coleman identified his account as "Quartez D. Coleman."

---

[1] The Honorable Joseph R. Wall presided over the jury trial.  The Honorable Glenn H. Yamahiro decided the postconviction motion.  We refer to Judge Wall as the trial court and Judge Yamahiro as the circuit court.

¶4    After St. Rose, S.H. was placed at Lad Lake.  Coleman contacted S.H. on Facebook asking her to meet up, but they did not, due to the distance.  On July 27, 2018, S.H. was granted a home pass to visit her family in Beloit, Wisconsin.  S.H. told Coleman that she was going to be in Beloit, and he offered to pick her up.

¶5    That weekend, Coleman picked S.H. up in Beloit and drove her to Milwaukee.  At the intersection of 26th Street and Center Street, Coleman told S.H. to get out of the car, and that she needed to make money before she goes home.  Coleman told S.H. to get into the cars with men, and "make some money." Coleman stated that S.H. needed to prostitute herself, and give him the money she earned.  S.H. believed that if she did not do as Coleman said, she would be stranded in Milwaukee.  S.H. then engaged in acts of sexual intercourse for money and turned the money over to Coleman.

¶6    The next morning, Coleman took S.H. to 26th Street and National Avenue in Milwaukee and told her to do the same thing.  S.H. told him "this is the last time," and he said, "we gonna see."  Near this location, S.H. engaged in another act of sexual intercourse with a male for money.  The next night, S.H. did not make any money.  Coleman was upset about this, and pointed a handgun at her.

¶7    Certified Facebook records showed communications between Coleman and S.H.  Coleman made various comments to S.H., including that "you been outside all day and haven't made nun smh," "you better be workin oml. Bitch I'm not playing w[ith] you hoe," and "talk to them white guys down there."

¶8    The case proceeded to trial.  After jury selection, and before opening statements, trial counsel sought to exclude evidence that S.H. had consensual sex

with Coleman. Trial counsel asserted that Coleman was not on trial for having sex with an underage minor. Accordingly, trial counsel requested that the State be limited to just addressing the trafficking charge.

¶9    The State responded that the evidence was relevant to show the grooming process and was not other-acts evidence. The State explained that this was a situation where fifteen-year-old S.H. thought she was in a boyfriend/girlfriend relationship with twenty-six year-old Coleman and engaged in consensual sex with him during a grooming period before he sold her on the street.

¶10   The trial court agreed with the State, and overruled the objection. The court stated that the evidence was not other-acts evidence and goes towards the grooming process. The court, however, noted that because it was a crime to have sex with S.H. due to her age and Coleman was not on trial for that, the parties should get together and draft a cautionary instruction.

¶11   Trial counsel then added that the testimony was "extremely prejudicial" and repeated that it was not related to the issue on trial. The court responded that trial counsel's objection was noted and preserved. Later, the court stated to the defense, "in terms of a cautionary instruction, think about … whether you want to even highlight something like that. It's up to you if you wish to have some sort of cautionary instruction on the fact that they were intimate and she was a minor." Ultimately, no cautionary instruction was sought, or given.

¶12   At trial, S.H. testified she met Coleman through Facebook. She testified that Coleman picked her up from the St. Rose's group home and they had sex. The next time she met up with Coleman, he picked her up from Beloit when she was on a home pass from Lad Lake and they went to Milwaukee. Prior to going to Milwaukee, S.H. believed that she was in a girlfriend/boyfriend

relationship with Coleman. Once in Milwaukee, S.H. testified that Coleman told her that he was going to sell her body. She testified she had oral sex with men in exchange for money five or six times over the course of three or four days. In support of S.H.'s testimony, the State introduced the Facebook conversations between Coleman and S.H.

¶13 The jury also heard testimony from several police officers, including Officer Gerardo Orozco, who is a member of the Milwaukee Police Department Human Trafficking Task Force. Officer Orozco described the difference between what is known as a "Romeo pimp" and a "gorilla pimp." He explained that Romeo pimps pretend to be the boyfriend, and then bring the girls in, which is the grooming stage. After the Romeo pimp makes a girl believe he is her boyfriend, he turns into a gorilla pimp, who becomes violent and at times uses drugs to control women. Detective Orozco testified that Romeo pimps are most common with child victims.

¶14 The jury found Coleman guilty as charged. Coleman filed a motion for postconviction relief. Coleman asserted that he was entitled to a new trial because his trial attorney was ineffective for failing to object to the testimony from S.H. that she and Coleman had sex. Coleman contended that trial counsel should have objected on the grounds that the evidence constituted improper other-acts evidence under WIS. STAT. § 904.04(2) (2021-22),[2] the evidence was irrelevant under WIS. STAT. § 904.02, and the probative value of the evidence was outweighed by the danger of unfair prejudice under WIS. STAT. § 904.03. In

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

addition, Coleman asserted that trial counsel was ineffective for failing to object to the jury instructions and failing to request a unanimity instruction.[3]

¶15    The circuit court denied Coleman's postconviction motion without an evidentiary hearing. The court first found that trial counsel was not ineffective for failing to object to the jury instructions or for failing to request a unanimity instruction. The court stated that the child trafficking statute, WIS. STAT. § 948.051(1) (2017-18), creates a single offense with alternative modes of commission and the modes were conceptually distinct. Thus, the instructions as given were appropriate.

¶16    In regards to S.H.'s testimony that she had sex with Coleman, the circuit court found that trial counsel's objection "sufficiently apprised the court of the bases for the objection, was considered by the court, and was denied, thereby preserving the objection for review." Thus, the circuit court found that trial counsel was not deficient, and Coleman was not prejudiced. This appeal follows.

## DISCUSSION

### I.    Ineffective Assistance of Counsel

¶17    On appeal, Coleman renews his arguments that trial counsel was ineffective.

¶18    When evaluating an ineffective assistance of counsel claim, we apply the well-established test in *Strickland v. Washington*, 466 U.S. 668 (1984).

---

[3] In addition, Coleman contended that he was entitled to a new trial in the interest of justice. Coleman does not raise this issue on appeal. Accordingly, we deem it abandoned and do not address it further. *State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993).

Under ***Strickland***, a defendant must show both that counsel performed deficiently, and that the deficiency was prejudicial. ***Id.*** at 687. To demonstrate deficient performance, the defendant must show that counsel's representation fell below objective standards of reasonableness. *See **State v. McDougle***, 2013 WI App 43, ¶13, 347 Wis. 2d 302, 830 N.W.2d 243. To prove prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See **id.*** (citation omitted). If a defendant fails to make an adequate showing as to one prong of the test, we need not address the other. ***Strickland***, 466 U.S. at 697.

¶19 When a postconviction motion is denied without an evidentiary hearing, we review *de novo* "whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief" and "whether the record conclusively demonstrates that the defendant is not entitled to relief." ***State v. Jackson***, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." ***State v. Allen***, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶20 Coleman argues that trial counsel was ineffective for failing to object to the trafficking a child jury instruction and failing to request a unanimity instruction pursuant to WIS JI—CRIMINAL 517.

¶21 In regards to trafficking a child, the trial court instructed the jury that the State must prove that the following three elements were present:

7

First, that the defendant knowingly recruited, enticed, provided, obtained, harbored, or transported [S.H.].

Second, [S.H.] had not attained the age of 18 years. Knowledge of [S.H.'s] age is not required. And mistake regarding [S.H.'s] age is not a defense.

Third, the defendant recruited, enticed, provided, obtained, harbored, or transported [S.H.] for the purpose of commercial sex acts. Commercial sex act includes mouth-to-penis sexual contact for which anything of value is given to, promised, or received, directly or indirectly by any person.

*See* WIS JI—CRIMINAL 2124.

¶22     The right to a trial by jury includes the right to an unanimous verdict in criminal trials. *State v. Dukes*, 2007 WI App 175, ¶33, 303 Wis. 2d 208, 736 N.W.2d 515. A defendant is entitled to unanimity with respect to the ultimate issue of guilt or innocence. *Holland v. State*, 91 Wis. 2d 134, 143, 280 N.W.2d 288 (1979). Unanimity, however, is not required with respect to the alternative means or ways in which a crime may be committed. *State v. Derango*, 2000 WI 89, ¶14, 236 Wis. 2d 721, 613 N.W.2d 833.

¶23     When addressing a unanimity challenge, we determine whether the statute creates multiple offenses or a single offense with alternative modes of commission. *State v. Dearborn*, 2008 WI App 131, ¶18, 313 Wis. 2d 767, 758 N.W.2d 463. If the statute creates multiple offenses, the jury must be unanimous as to each offense. *Id.*, ¶19. However, if there is only a single offense with alternative modes of commission, we evaluate whether due process requires unanimity. *Id.*

¶24     Here, Coleman does not dispute that the trafficking a child statute creates one offense with alternative modes of commission. Rather, Coleman

contends that the alternative modes of commission are conceptually distinct creating due process concerns.

¶25 We disagree with Coleman. The alternative modes of commission of trafficking a child—recruiting, enticing, providing, obtaining, harboring, transporting, patronizing, and soliciting—are clearly conceptually and morally equivalent acts. The end goal of each of the acts is to exploit a child for the purpose of commercial sex acts. *Cf. Derango*, 236 Wis. 2d 721, ¶24 (holding that the alternative mental states for committing child enticement were "clearly conceptually and morally equivalent" because they all related to causing physical, sexual, and mental harm to a child); *Dearborn*, 313 Wis. 2d 767, ¶41 (holding that the alternative ways to resist a warden were of "similar moral culpability" because they each interfered with a warden's performance of duty). Thus, we conclude that a unanimity instruction was not required.

¶26 Therefore, the record conclusively shows that trial counsel did not perform deficiently by failing to object to the child trafficking instruction or failing to request a jury unanimity instruction. The "[f]ailure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit." *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 441.

¶27 Coleman additionally alleges that his trial counsel was ineffective for failing to sufficiently object to S.H.'s testimony that she and Coleman had sex. Coleman contends that trial counsel should have objected to this testimony based on lack of relevancy pursuant to WIS. STAT. § 904.02, prejudice pursuant to WIS. STAT. § 904.03, and improper other-acts evidence pursuant to WIS. STAT. § 904.04(2).

¶28    The State responds that during the postconviction proceedings, Coleman conceded that trial counsel's objection was sufficient. Alternatively, the State argues that trial counsel did not perform deficiently.

¶29    Even if we assume that Coleman did not concede his argument, we agree with the State that the record conclusively shows that trial counsel did not preform deficiently. *See Allen*, 274 Wis. 2d 568, ¶9. Trial counsel *did* object to the testimony regarding S.H.'s sexual relationship with Coleman. Trial counsel made a relevancy objection by arguing that Coleman was "not here for a charge of having sex with an underage minor" and requesting that the State "be limited to just addressing the trafficking charge." Trial counsel also specifically argued that the information was "extremely prejudicial." Thus, trial counsel sufficiently objected based on relevancy and prejudice thereby preserving these objections for review. *See State v. Agnello*, 226 Wis. 2d 164, 174, 593 N.W.2d 427 (1999) (stating that a party should "object in such a way that the objection's words or context alert the court of its basis"). While Coleman did not specifically characterize the evidence as other-acts evidence, as discussed in detail below, S.H.'s testimony was not other-acts evidence. As a result, trial counsel was not ineffective for failing to raise this meritless objection. *See Wheat*, 256 Wis. 2d 270, ¶14.

¶30    Therefore, Coleman has failed to establish that trial counsel was ineffective, and we conclude that the circuit court properly denied Coleman's postconviction motion without an evidentiary hearing.

## II.    Trial Court's Exercise of Discretion

¶31    Coleman alternatively contends that if trial counsel sufficiently objected to the testimony that Coleman had sex with S.H., the trial court erred.

¶32     A trial court's decision to admit or exclude evidence lies within the court's discretion.  *State v. Harris*, 2008 WI 15, ¶85, 307 Wis. 2d 555, 745 N.W.2d 397.  A trial court's evidentiary ruling will be upheld if it "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach."  *State v. Dorsey*, 2018 WI 10, ¶37, 379 Wis. 2d 386, 906 N.W.2d 158 (citation omitted).  "[A] reviewing court may search the record for reasons to sustain the [trial] court's exercise of discretion."  *State v. LaCount*, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780.

¶33     Coleman contends that the trial court should have conducted an other-acts evidence analysis, *see State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998), or an analysis under WIS. STAT. § 904.03 to determine whether the probative value of the evidence was outweighed by the danger of unfair prejudice.  We disagree.

¶34     To start, not all references to prior bad acts constitute other-acts evidence.  *See State v. Seefeldt*, 2002 WI App 149, ¶21, 256 Wis. 2d 410, 647 N.W.2d 894.  Evidence is not other-acts evidence "if it is part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime."  *Dukes*, 303 Wis. 2d 208, ¶28.

¶35     Here, the trial court properly concluded that the evidence was not other-acts evidence.  As the State explained in response to trial counsel's objection, the evidence "goes to the grooming process of trafficking of a child[.]"  The State further explained that this "was a situation in which this 15-year-old girl thought she was in a boyfriend/girlfriend relationship with this defendant [and] did engage in what I will consider cooperative sex with him during this grooming

11

period before he sold her for sex on the street." Thus, the evidence was needed to "completely describe the crime that occurred." *See* *id.* It also fit with Officer Orozco's testimony about how "Romeo pimps" use the pretense of a romantic or intimate relationship as a means of grooming a sex trafficking victim.

¶36 In addition, the trial court properly assessed the prejudicial effect of S.H.'s testimony. While the trial court did not specifically reference WIS. STAT. § 904.03 or whether the probative value of the testimony was outweighed by the danger of unfair prejudice, the record reflects that the trial court considered the prejudicial effect of the testimony. The trial court stated that "I think we should have some sort of a cautionary instruction at the end of the trial" and suggested that the parties get together and draft an instruction since Coleman was not on trial for having sex with a minor. This indicates that the trial court considered the potential prejudicial effect of the evidence, but concluded that the relevance of the evidence was not substantially outweighed by the danger of unfair prejudice.

¶37 Therefore, for all of the reasons above, we reject Coleman's arguments.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.