STATE of Wisconsin, Plaintiff-Respondent,†

v.

Richard L. WESLEY, Defendant-Appellant.††

Court of Appeals

*No. 2008AP1338–CR. Oral argument April 30, 2009.*
*—Decided June 24, 2009.*

2009 WI App 118

(Also reported in 772 N.W.2d 232.)

† Petition to review denied 9/24/09.
†† Petition to cross-review denied 9/24/09.

151

On behalf of the defendant-appellant,the cause was submitted on the briefs of *Alvin R. Ugent* of *Podell, Ugent & Haney, S.C.* of Milwaukee. There was oral argument by *Robert Haney*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Katherine D. Lloyd*, assistant attorney general, and *J.B. Van Hollen*, attorney general. There was oral argument by *Katherine D. Lloyd*.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. Richard L. Wesley struck a bargain with the State to plead guilty to a hit-and-run felony in return for a "dismissal outright" of a negligent homicide by use of a motor vehicle charge. At sentencing, however, the State narrated the account of another driver who witnessed what can charitably be described as Wesley's "negligent" driving behavior just prior to the hit-and-run and also underscored Wesley's own admission that he was looking down and changing his CD player when he hit the victim. Did the State violate the plea bargain by highlighting this information? And what does "dismissed outright" mean anyway? Assuming it means whatever the parties agree it means, was Wesley's defense counsel ineffective for failing to negotiate a definitive consequence to both parties concerning the reach of the term "dismissed outright" during the plea bargain process, or by failing to raise the issue at sentencing or at least discuss with Wesley the ramifications of the term "dismissed outright"? These are the issues we discuss in this opinion. Ultimately, we

reverse and remand for a *Machner*[1] hearing for the reasons we will hereafter discuss.

## BACKGROUND

¶ 2.   The State charged Wesley with homicide by negligent operation of a vehicle and hit-and-run resulting in death. Wesley accidentally hit and killed a man while driving home. He did not stop at the accident scene, but did turn himself in the next day. While not crucial to the issues before us, it should be pointed out that the victim was distraught, if not suicidal, and he had earlier positioned himself in the roadway, daring cars to hit him.

¶ 3.   As part of a plea agreement, Wesley pled guilty to hit-and-run involving death pursuant to Wis. Stat. § 346.67(1) (2007–08).[2] In return, the State "dismissed outright" the homicide by negligent operation of a vehicle charge. The agreement also stated that "[b]oth sides are free to argue."[3]

¶ 4.   At sentencing, the State began by telling the trial court that while "[t]here may be inferences and suggestions that there was a consumption of alcohol and/or drugs that may have preceded the fatal collision . . . he is not charged with homicide by intoxicated use. Obviously if the State had such evidence, he probably would have been charged." But, the State was not happy with the presentence investigation report's

---

[1] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] Wesley's trial counsel entered the terms of the plea agreement on the record at the plea hearing. She stated: "The State's offer, for the record, is pleading to count two, hit and run. The State will dismiss outright homicide by negligent operation of a vehicle. Both sides are free to argue."

(PSI) recommendation of a withheld sentence, a lengthy period of probation and one year in the county jail. Instead, the State signaled its intention to argue for a prison sentence.

¶ 5. The State then recounted the information provided by a third-party witness who explained that he was on his way home in the early morning hours when he observed an automobile tailgating him. According to the State,

> [The witness] was traveling 40 miles an hour and thought to himself, how much faster does this guy want me to go?
>
> The car behind him suddenly passed him like he was standing still, and he estimated the speed of the car traveling at about 50 miles per hour . . . .
>
> The vehicle continued to accelerate, speed, continued to pass other vehicles . . . .

The State then explained that the witness lost site of the vehicle and, five blocks later, encountered the victim lying in the street. The State further accented a fact that was contained in the PSI: "[Wesley] was looking down at his CD changer or was changing some music." The State concluded by stating that: "[H]e was speeding . . . . He was driving negligently. He was passing vehicles." The trial court ultimately sentenced Wesley to seven years of initial confinement and eight years of extended supervision.

¶ 6. Wesley filed a motion for postconviction relief asserting that his trial counsel was ineffective, based on two alternative theories.[4] First, he alleged that at sentencing, the State violated the plea agreement to

---

[4] Wesley also asserted several theories why his sentence should be vacated based on the sentencing judge's consider-

157

"dismiss outright" the homicide by negligence charge by characterizing his driving as negligent and referring to the portion of the PSI report indicating negligent behavior. And since Wesley's counsel did not object to the prosecutor's breach at sentencing, counsel was ineffective.

¶ 7. Alternatively, he asserted that if the "dismissed outright" agreement did not prohibit the State from accenting his driving conduct during sentencing, he understood otherwise and, therefore, he did not meaningfully and intelligently understand the plea. He also faulted his trial counsel as being ineffective for never explaining to him how the State could use the facts underlying the dismissed negligent homicide charge at sentencing. He asserted that, because counsel did not explain to him how the State could use a charge that was "dismissed outright," he could not have knowingly and intelligently understood the meaning of "dismissed outright" when he pled. He argued, therefore, that he should be allowed to withdraw his plea.

¶ 8. At the hearing, the State claimed that all the "dismissed outright" term really meant was that both parties would be free to argue the facts and circumstances underlying the dismissed charge. Wesley complained that, if the State's argument were accepted, there would be no difference whatsoever between a "dismissed-and-read-in" charge and a "dismissed outright" charge since, carrying out the State's proposition to its fullest, both would mean the same thing—that the court could consider the dismissed charge at sentencing. This is because a charge that is "dismissed-and-read-in" allows the State to bring up the charge and

ations at sentencing. The postconviction court dismissed these theories and Wesley does not present them on appeal.

have the court consider the charge at sentencing. Wesley contended that "dismissed outright" had to mean something different from a read-in.

¶ 9. At the conclusion of the hearing, the trial court determined that the State had in no way violated the plea agreement. The trial court noted that, pursuant to the plea agreement, both parties reserved the right to argue and the trial court reasoned that this meant the parties agreed that the State could use the facts and circumstances of the "dismissed outright" incident as part of its argument. The trial court then commented specifically on Wesley's argument that, if the State were allowed to ask the court to consider the facts and circumstances underlying a "dismissed outright" charge, then there would be virtually no distinction between that and a charge that was "dismissed-and-read-in." The trial court stated that the essential difference between a "dismissed outright" agreement and a "dismissed-and-read-in" accord was that no restitution order could follow from a charge "dismissed outright." Because no restitution was ordered, the trial court held that Wesley had received the benefit of the bargain and denied the motion for withdrawal of the plea or a *Machner* hearing. From this denial, Wesley has appealed.

## DISCUSSION

¶ 10. The crux of Wesley's arguments on appeal concerns the meaning of the term "dismissed outright" in the plea agreement. If we determine that the plea agreement meant what Wesley asserts on appeal, that at sentencing the State could not refer to the facts underlying the homicide by negligent use of an automobile charge nor rely on these facts to argue for prison rather than a withheld sentence and probation with jail

time, then we must decide if the State's comments at sentencing breached that agreement. However, if we conclude that the plea agreement either unambiguously allowed the State to argue the underlying facts or was so ambiguous that we are uncertain what the term meant, then we must determine if Wesley knowingly and intelligently understood his plea. And that requires input from his trial counsel as to what she told him and testimony by him about what he was told and what he understood. In short, the question then becomes whether sufficient information was provided to the trial court such that a *Machner* hearing should have been ordered.

## 1. Meaning of the Plea Agreement

¶ 11.    The parties do not dispute that the terms of the plea agreement stated at the final presentencing hearing were as follows:    Wesley would plead guilty to the hit-and-run charge and the State would "dismiss outright" the homicide by negligence charge. "Both sides would be free to argue." Rather, the parties dispute the meaning or the scope of this part of the plea agreement. The plea agreement did not explain the ramifications of the outright dismissal. To repeat, Wesley contends that the agreement meant the State could not refer to the charge or the underlying facts at sentencing. The State, however, asserts it was free to argue the underlying facts. The trial court, as we said, found that the agreement meant that both sides would be free to argue about the significance of the charge which was "dismissed outright." The trial court further found that by using the term "dismissed outright," it was the parties' intent that the dismissed charge would

not result in restitution. The State argues on appeal that this is the correct interpretation and urges us to adopt it.

¶ 12.   The interpretation of plea agreements is rooted in contract law. *See State v. Deilke*, 2004 WI 104, ¶ 12, 274 Wis. 2d 595, 682 N.W.2d 945. Contractual language is ambiguous only when it is "reasonably or fairly susceptible of more than one construction." *State v. Windom*, 169 Wis. 2d 341, 348–49, 485 N.W.2d 832 (Ct. App. 1992) (citation omitted). Whether an ambiguity exists in a plea agreement is a question of law we decide de novo. *See id.* at 349.

¶ 13.   We disagree with the trial court's conclusion that the agreement unambiguously allowed both parties to argue the significance of the "dismissed outright" charge as it related to sentencing. The phrase "both sides are free to argue" did not relate or refer back to the "dismissed outright" charge in any way. It just as easily could have been an agreement that both parties were free to argue about whether he should be incarcerated in prison.

¶ 14.   We further disagree that the purpose of dismissing the charge was to relieve Wesley of exposure to restitution for that charge. First, there is absolutely no mention in the plea agreement of restitution in any form whatsoever. Second, it makes no sense because, regardless of the dismissal of the homicide by negligent use charge, Wesley still faced exposure to restitution by virtue of his plea to the hit-and-run charge. So, we reject the trial court's interpretation and, thus, the State's argument supporting it.

161

■ ¶ 15. Nor can we agree with Wesley that the use of the term "dismissed outright" unambiguously meant the State could not thereafter use the facts underlying the dismissed charge for any purpose whatsoever. In support he cites *Office of Lawyer Regulation v. Chvala*, 2007 WI 47, 300 Wis. 2d 206, 730 N.W.2d 648 (per curiam). There, our supreme court observed that, pursuant to a plea agreement, the State dismissed a variety of criminal charges against Charles Chvala, but attached different ramifications to each dismissal. *Id.*, ¶ 5. The court noted that the State dismissed some charges outright with prejudice, some with the understanding that the defendant continued to dispute them and that both sides would be free to comment on those counts at the sentencing hearing, and others were read in for sentencing purposes. *Id.* Wesley reads this case as standing for the proposition that dismissals with prejudice differ from the other two kinds of dismissals, and his dismissal was akin to a dismissal with prejudice.

¶ 16. But reference to *Chvala* actually works against Wesley here. In that case, by placing the dismissals in three separate categories, the parties succinctly defined and agreed to the ramifications of each category. Here, the parties made no succinct, defining agreement. Wesley bears the burden of convincing us the agreement is not ambiguous and his interpretation is correct. *See State v. Jorgensen*, 137 Wis. 2d 163, 168, 404 N.W.2d 66 (Ct. App. 1987) (the party seeking to vacate the agreement and withdraw his or her plea must establish a material and substantial breach by clear and convincing evidence). Wesley has failed to meet his burden. He has not introduced any evidence to prove that the parties agreed on the meaning when he entered his plea.

¶ 17. We thus conclude that the plea bargain was ambiguous because the agreement could have meant the State would either (1) dismiss the charges outright, with prejudice, and not refer to the facts underlying the charge in any form at sentencing; or (2) dismiss the charges so that Wesley would not face exposure to a sentence for that charge, but both sides would be free to comment on the underlying facts of the dismissed charge and argue their significance for sentencing purposes. The agreement is just plain silent about what the term was to mean. It could have reasonably meant either of the above.

■

¶ 18. We also reject Wesley's theory that an ambiguous plea agreement should be construed against the State because ambiguous contracts are construed against their drafter. First, the record does not tell us who "drafted" the agreement. It appears that the "drafting" was coequal between the parties, if anything. Second, and more importantly, we do not construe plea bargains against the drafter in Wisconsin. Rather, we follow *Jorgensen*. In *Jorgensen*, we reviewed an ambiguous plea agreement that obliged the State to remain "silent" at the sentencing proceeding. *Jorgensen*, 137 Wis. 2d at 169. In determining whether "silent" meant the State was precluded from making any statement whatsoever or just from commenting on the specific sentence, we declared that when language is "equally capable of two constructions, that construction which would safeguard the public interests, substantially, must be given preference [over] that construction which secures only insufficient or unsubstantial advantages to the public." *Id.* at 169–70 (citation omitted).

Wesley has not made any argument relating to *Jorgensen*. However, we are bound by *Jorgensen*.[5]

¶ 19. And, to the extent that the State might claim that the public interest demands we use its preferred definition, we reject that too, because it could just as easily be said that the public interest favored the

[5] Our independent research reveals that the subject of ambiguous plea agreements has been addressed by every federal circuit court and various state courts. Every federal circuit court has held that ambiguities in plea agreements must be construed against the government and in accordance with the defendant's reasonable understanding of the agreement. *See United States v. Giorgi*, 840 F.2d 1022, 1026 (1st Cir. 1988); *United States v. Ready*, 82 F.3d 551, 558–59 (2nd Cir. 1996); *United States v. Baird*, 218 F.3d 221, 229 (3rd Cir. 2000); *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986); *United States v. Sibley*, 448 F.3d 754, 759 (5th Cir. 2006); *United States v. Harris*, 473 F.3d 222, 225–26 (6th Cir. 2006); *Carnine v. United States*, 974 F.2d 924, 928–29 (7th Cir. 1992); *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003); *United States v. De la Fuente*, 8 F.3d 1333, 1337–38 n.7 & n.8 (9th Cir. 1993); *United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007); *United States v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir. 1990). In addition, we have identified eighteen states that have adopted the same rule. The rationale appears to be that, unlike private contract situations, both constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant. *See Harvey*, 791 F.2d at 300–01. Were we writing on a clean slate, and were the issue properly before us, we would join the unanimous agreement of the federal circuits. But we are not writing on a clean slate and Wesley has not argued that, pursuant to the above cases, plea bargains must be construed against the government. He argues that they must be construed against the "drafter." *State v. Jorgensen*, 137 Wis. 2d 163, 404 N.W.2d 66 (Ct. App. 1987), is the law in this state unless or until our supreme court determines otherwise.

State not risking a jury trial in a case involving a depressed victim who put himself in harms way, challenging cars to hit him.

¶ 20.   Because we are unconvinced by both parties' arguments regarding the definite meaning of the term "dismissed outright," and because we are satisfied that the agreement is hopelessly ambiguous to *us,* we must next determine whether the term was nonetheless unambiguous in *Wesley's mind* at the time he pled, such that he did not knowingly and intelligently understand the consequences of his plea. This is important because in *Santobello v. New York*, 404 U.S. 257, 261–62 (1971), the United States Supreme Court held that, as a matter of due process, if a guilty plea is induced by promises from the government, "the essence of those promises must in some way be made known."

### 2. Knowingly and Intelligently Entered Plea

¶ 21.   Wesley contends that, if the meaning of the plea agreement is ambiguous, it was new to him because he thought that the dismissed charge would not be thereafter used against him. He contends, therefore, that he did not knowingly and intelligently enter his plea. He asserts that this deficiency is a manifest injustice, so he should be able to withdraw his plea. In the same breath, he faults his trial counsel for failing to hammer out a more definite and certain plea agreement or at least explain to him what she thought the term "dismissed outright" meant, and raises an ineffective assistance of counsel argument that also claims a manifest injustice.

¶ 22.   We first consider whether Wesley's motion alleged sufficient facts that would entitle him to withdraw his guilty plea. After sentencing, a plea may be

withdrawn only if doing so is necessary to correct a manifest injustice. *State v. Booth*, 142 Wis. 2d 232, 235, 418 N.W.2d 20 (Ct. App. 1987). A defendant has the burden of proving a manifest injustice by clear and convincing evidence. *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). The manifest injustice test can be satisfied by a showing that the defendant received ineffective assistance of counsel. *See id.*

██ ██

¶ 23. A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief. *State v. Allen*, 2004 WI 106, ¶ 14, 274 Wis. 2d 568, 682 N.W.2d 433. When an issue of ineffective assistance of counsel is intertwined, the movant must also allege a prima facie claim of ineffective assistance of counsel, showing that counsel's performance was deficient and that this deficient performance prejudiced the movant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, the movant must show facts from which a court could conclude that counsel's representation was below the objective standards of reasonableness. *See State v. McMahon*, 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). To establish prejudice, the defendant must show facts from which a court could conclude that its confidence in a fair result is undermined. *Strickland*, 466 U.S. at 694. If the motion raises such facts, the circuit court must hold an evidentiary hearing. *Allen*, 274 Wis. 2d 568, ¶ 9. This is a question of law that we review de novo. *Id.* If, however, the record conclusively demonstrates that the movant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing. *Id.*

166

¶ 24. Here, as we said, Wesley claims that he understood the term "dismissed outright" to mean that the State could never use the underlying facts against him. He claims that his trial counsel was ineffective for failing to object. He also claims that, if the plea agreement was ambiguous, he should have known about it and lays the blame at counsel's feet. These are all facts, which if true, would entitle him to relief. The trial court rejected the call for a hearing by deciding that the agreement was not ambiguous. We have already held otherwise. This leaves many facts to be parceled out and they can come out at a *Machner* hearing only. We reverse and remand with directions that the trial court conduct a *Machner* hearing. At this hearing, should Wesley decide to testify about whether he knowingly and intelligently understood the terms of the plea agreement, the court shall make findings of fact regarding this issue as well as any ineffective assistance of counsel claims before the court.

¶ 25. We also point out that there is another question that the parties must flesh out on remand. The law in Wisconsin is that "[a]greements by . . . prosecutors . . . not to reveal relevant and pertinent information to the trial judge charged with the duty of imposing an appropriate sentence upon one convicted of a criminal offense, are clearly against public policy and cannot be respected by the courts." *Grant v. State*, 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976). Whether the State was merely providing pertinent and relevant information or went beyond it by using it to augment its argument in favor of incarceration is a question to be decided on remand. This question will come into play with respect to the ineffective assistance of counsel

claims. It is up to the parties, and ultimately the trial court, to measure the extent by which the policy impacts the result.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.