DUGAN, J.
¶1 Howard D. Davis appeals from the judgment of conviction, following a jury trial, finding him guilty as a party to the crimes of first-degree reckless homicide and first-degree recklessly endangering safety, with both crimes having use of a dangerous weapon and repeat offender penalty enhancers. He also appeals the order denying his postconviction motion.[1]
¶2 On appeal, Howard Davis argues that the trial court erred when it failed to conduct an evidentiary hearing on his claims of ineffective assistance of trial counsel and juror misconduct. More specifically, Howard Davis claims that trial counsel was ineffective because trial counsel (1) did not present purported alibi evidence, (2) did not obtain the testimony of a person who was present during the shooting, (3) did not adequately question a witness regarding the details of her prior convictions, (4) did not request the other acts jury instruction regarding rap lyrics, (5) did not request the other acts jury instruction regarding testimony that he failed to notify the police that a victim had shot him, (6) did not request the jury instruction addressing consideration received by a witness in exchange for testifying, and (7) did not request a jury instruction addressing the missing recording of that witness's statement.[2] He also asserts that the trial court (1) erred by applying an incorrect legal standard when it overruled trial counsel's objection to the testimony of the witness whose recorded statement was missing, and (2) erred by denying his juror misconduct claim without an evidentiary hearing.
¶3 We are not persuaded. We conclude that Howard Davis did not allege sufficient facts regarding his ineffective assistance of trial counsel and juror misconduct claims that would entitle him to relief and, therefore, the trial court properly denied his motion without a hearing. We also conclude that Howard Davis did not preserve his claim that the trial court applied the wrong legal standard in overruling trial counsel's objection to the testimony of the witness whose recorded statement was missing. Consequently, we affirm.
BACKGROUND
¶4 On June 6, 2014, at about 9:09 p.m., two men fired shots from a passing vehicle at R.H. and J.W. near North 16th Street and West North Avenue in Milwaukee. Two Milwaukee police officers were dispatched to the scene and found J.W. on the ground in a parking lot with a gunshot wound to the left side of his abdomen. J.W. told one of the officers that he heard the gunshots coming from a black Chevrolet Suburban with large chrome wheels and tinted windows, and that the Suburban was traveling north on 16th Street.
¶5 Further to the west in an alley, R.H. was face down on the ground with four gunshot wounds-he had no pulse. R.H. died of the multiple gunshot wounds.
¶6 Two detectives investigated the scene and collected evidence. In the parking lot, they recovered a fired bullet, which was later sent to the Wisconsin State Crime Laboratory for examination. They also checked the area for any businesses and private residences that had surveillance devices that included video recordings from the time of the shooting.
¶7 Detective Timothy Graham examined the surveillance videos and testified that the videos depicted a silver/gray Saturn sports utility vehicle (SUV) drive up and that shots were fired from two areas within the SUV. The videos also showed a blue Chevrolet Suburban that was closely following the SUV stop for a few seconds as the shots were fired. The Suburban had some distinctive Milwaukee Brewers' logos on it. Further investigation led the police to Fabian Edmond, the owner of the Suburban. According to Edmond, during the shooting, three men-Edmond, Earnest Davis, and Eddie Davis and a two-year-old child-were with him in his Suburban. Edmond was driving, Earnest Davis was in the front passenger seat, and Eddie Davis was in the back seat with the sleeping child.
¶8 On June 11, 2014, the police arrested Howard Davis for his suspected involvement in the shootings and he was held in custody at the Milwaukee Secure Detention Facility.
¶9 The State contended that it found rap lyrics that Howard Davis wrote in his jail cell portraying himself as a revenge killer. The police found the rap lyrics and Howard Davis's inmate identification card under the mattress of the top bunk on June 25, 2014, when they executed a search warrant for the cell occupied by Howard Davis at the Milwaukee Secure Detention Facility. Further, testimony reflected that while Howard Davis was in custody he told inmate Willie Nelson that he killed R.H. and told inmate Jamil Tubbs that he shot J.W. in the face.
¶10 On August 24, 2014, the State charged Howard Davis with one count of first-degree reckless homicide as a party to a crime, and one count of first-degree recklessly endangering safety as a party to a crime, with use of a dangerous weapon and repeat offender penalty enhancers for each offense, and one count of possession of a firearm by a felon, with a repeat offender penalty enhancer.
¶11 Trial counsel filed motions in limine to exclude evidence that R.H. told others that he shot Howard Davis in the past as being inadmissible hearsay and also to exclude the rap lyrics as inadmissible hearsay or inadmissible other acts evidence. The trial court denied the motions in limine .
¶12 During March 2015, the trial court presided over a four-day jury trial. During trial, the trial court overruled trial counsel's objection to the testimony of Nelson whose recorded statement was missing. The jury returned verdicts finding Howard Davis guilty of the first-degree reckless homicide and first-degree recklessly endangering safety charges, and not guilty of the possession of a firearm by a felon charge. The trial court imposed a global sentence of sixty-two years consisting of forty-five years of initial confinement and seventeen years of extended supervision.
¶13 Howard Davis filed a postconviction motion alleging seven ways that trial counsel failed to provide effective representation during trial. He also asserted that he was entitled to a new trial due to juror misconduct. The State filed a response and a motion to strike most of the juror statements Howard Davis filed in support of his motion. Howard Davis filed a reply in support of his postconviction motion, but did not respond to the motion to strike. Subsequently, in a written decision, the trial court granted the State's motion to strike and denied Howard Davis's postconviction motion without a hearing. This appeal followed.
DISCUSSION
¶14 On appeal, Howard Davis asserts that the trial counsel was ineffective in seven ways during trial, and that the trial court erred by applying an incorrect legal standard when it overruled trial counsel's objection to the testimony of Nelson whose recorded statement was missing and erred by denying his postconviction juror misconduct claim without an evidentiary hearing.
I. Standard of review and applicable law
Pleading requirements to obtain an evidentiary hearing
¶15 "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." State v. Allen , 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433. See also State v. Wesley , 2009 WI App 118, ¶23, 321 Wis. 2d 151, 772 N.W.2d 232. To obtain an evidentiary hearing, a postconviction motion should satisfy "the five 'w's' and one 'h' " test; "that is, who, what, where, when, why, and how." See Allen , 274 Wis. 2d 568, ¶23. A motion provides "sufficient material facts," if it provides the name of the witness (the who), the reason the witness is important (the why and the how), and facts that can be proven (the what, where, and when). See id. , ¶24. "[A] postconviction motion for relief requires more than conclusory allegations." Id. , ¶15. We review "only the allegations contained in the four corners of [Howard Davis's] postconviction motion, and not any additional allegations that are contained in [Howard Davis's] brief." See id. , ¶27.
Standard of review for ineffective assistance of counsel claims
¶ 16 "Wisconsin has adopted the United States Supreme Court's two-pronged Strickland test to analyze claims of ineffective assistance of counsel." State v. Williams , 2015 WI 75, ¶74, 364 Wis. 2d 126, 867 N.W.2d 736. See also Strickland v. Washington , 466 U.S. 668 (1984). "To prevail under Strickland , a defendant must prove that counsel's representation was both deficient and prejudicial." Williams , 364 Wis. 2d 126, ¶74. To establish deficient performance, the defendant must show that counsel's representation was below objective standards of reasonableness. State v. McMahon , 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). As to the second prong of the ineffective assistance of counsel test, prejudice occurs when counsel's error is of such magnitude that there is a "reasonable probability" that but for the error the outcome of the trial would have been different. State v. Erickson , 227 Wis. 2d 758, 769, 596 N.W.2d 749 (1999).
¶17 The determination of whether a motion sets forth sufficient facts to allege a prima facie case of ineffective assistance of counsel is a question of law that we review de novo . See Wesley , 321 Wis. 2d 151, ¶23. "If, however, the record conclusively demonstrates that the movant is not entitled to relief, the [trial] court has the discretion to grant or deny a hearing." Id. A proper exercise of discretion requires that the trial court base its decision on the relevant facts, apply the proper standard of law, and reach a reasonable conclusion using a demonstrated rational process. State v. Bowser , 2009 WI App 114, ¶9, 321 Wis. 2d 221, 772 N.W.2d 666.
Standard of review for trial court error claim
¶18 Generally, when a defendant seeks to challenge the validity of a verdict under WIS. STAT. § 906.06(2) (2015-16),[3] the defendant must show "(1) that the juror's testimony concerns extraneous information (rather than the deliberative process of the jurors), (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial." State v. Eison , 194 Wis. 2d 160, 172, 533 N.W.2d 738 (1995).
II. The trial court properly found that Howard Davis had not presented a viable ineffective assistance of counsel claim
¶19 We address each of the seven components of Howard Davis's ineffective assistance of counsel claim and conclude that the trial court properly determined that Howard Davis did not present sufficient facts to establish a prima facie case of ineffective assistance of counsel.
Howard Davis did not present sufficient facts that trial counsel was ineffective in failing to present an alibi defense
¶20 Howard Davis asserts that trial counsel was deficient in his failure to investigate and present his proposed alibi defense, citing State v. Cooks , 2006 WI App 262, 297 Wis. 2d 633, 726 N.W.2d 322.[4] He argues that three witnesses place him at his residence the night of the June 6, 2014 shooting-his father, Howard Davis Sr.; his uncle, Gordon Yancey; and the mother of his children, Akira Wilbert. He also states that trial counsel knew of the alibi prior to trial. Howard Davis relies on affidavits of Yancey and Wilbert attached to his postconviction motion and two other documents attached to his reply brief.
¶21 Alibi "is merely a shorthand method of describing a defense based on the fact that the accused was elsewhere at the time the alleged incident took place." State v. Brown , 2003 WI App 34, ¶13, 260 Wis. 2d 125, 659 N.W.2d 110 (citation omitted). "Since an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." Id. , ¶14 n.5 (citations and one set of brackets omitted).
¶22 In support of his alibi defense, Howard Davis submits affidavits from Wilbert and Yancey and provides only his own conclusory statement that Howard Davis Sr. places Howard Davis at Howard Davis Sr.'s home on June 6, 2014-he does not provide a statement from Howard Davis Sr. In her affidavit, Wilbert states that she and Howard Davis spoke on the phone several times on June 6, 2014, between 5:00 p.m. to 9:30 p.m., via his father's home phone number. However, her statement that she had intermittent phone conversations over four and one-half hours does not provide sufficient facts to indicate that Howard Davis was at his father's home at 9:09 p.m., when the shootings occurred. See id. , ¶13.
¶23 Similarly, Yancey's vague, non-specific statement that in the "late afternoon and evening" of June 6, 2014, he was at Howard Davis Sr.'s home playing chess with Howard Davis falls short of providing sufficient facts to establish a potential alibi. See Allen , 274 Wis. 2d 568, ¶24 (providing a hypothetical example of a postconviction motion alleging that trial counsel was ineffective to call a witness).
¶24 Based on the affidavits Howard Davis submitted in support of his alibi, we conclude that his purported alibi which leaves it possible that he committed the crimes that he was convicted of is no alibi at all. See Brown , 260 Wis. 2d 125, ¶14 n.5.
¶25 Howard Davis also asserts that he informed the trial court in his moving papers that he would testify to having timely informed trial counsel of the specifics of his alibi defense. First, Howard Davis did not assert in his postconviction motion that he timely informed trial counsel of the specific facts of his alibi that he would testify about-he raised that assertion for the first time in his postconviction reply brief. Moreover, Howard Davis failed to identify specific facts of his alibi that he would testify about. In determining whether a motion states sufficient material facts, we review "only the allegations contained in the four corners of [Howard Davis's] postconviction motion." See id. , ¶27. Nonetheless, both the trial court and the State address Howard Davis's reply argument. Therefore, to be complete we explain why, even if considered and accepted as true, Howard Davis's postconviction reply submissions are insufficient to establish that trial counsel knew about the alibi witnesses.
¶26 In support of his statement that he timely provided the specifics of his alibi defense to trial counsel in advance of trial, Howard Davis submits two documents that he asserts show trial counsel was aware of the alibi defense prior to trial. One document that he describes as trial counsel's October 22, 2014 note from a meeting with Howard Davis includes Wilbert's name and phone number. The other document is Howard Davis's November 21, 2014 letter to trial counsel stating, "I ask[ed] you to interview witnesses and I'm sure you haven't, plus I've ask[ed] you to retrieve key evidence that could prove my innocents [sic][.]" Neither the note nor the letter mentions any alibi, Howard Davis Sr., or Yancey. Further, the two documents do not provide any indication that trial counsel knew Wilbert could provide any alibi-they only establish that trial counsel had her name and phone number. Thus, unlike Cooks , Howard Davis did not present facts in his motion indicating that trial counsel knew about his purported alibi. See id. , 297 Wis. 2d 633, ¶50.
¶27 We conclude, as a matter of law, that Howard Davis did not allege sufficient facts to entitle him to an evidentiary hearing regarding his claim that trial counsel was ineffective in investigating and presenting an alibi defense. Therefore, the trial court properly denied this component of his ineffective assistance of counsel claim without a hearing.
Howard Davis did not present sufficient facts that trial counsel was ineffective for failing to call a witness
¶28 Relying on Detective Kent Corbett's report of a June 18, 2014 interview of Eddie Davis, Howard Davis maintains that trial counsel was deficient in his failure to call Eddie Davis, who was present at the crime scene, as a witness. Howard Davis asserts that Eddie Davis, who was in the Suburban at the time of the shooting, denies having seen Howard Davis "at all" on June 6, 2014. He then argues that Eddie Davis's denial contradicts (1) Edmond and Earnest Davis's testimony that they saw Howard Davis returning in the SUV to a graduation party that they all attended on June 6, 2014, and (2) their testimony about what Howard Davis said and did at the time of the shooting.
¶29 Howard Davis's motion does not summarize Edmond or Earnest Davis's trial testimony. However, the record establishes that at trial, Edmond testified that he recognized the gray SUV that was involved in the incident because he saw it earlier in the day and he knew the person, Jarmel D. Chisem, who was driving it.[5] Earnest Davis saw the shooting and Edmond heard the gunshots. Edmond drove away from the scene immediately and returned to a graduation party that he had been at earlier in the day at 17th Street and Keefe Avenue. Later that day at the party, "everybody got to saying [R.H.] got shot," and Howard Davis said to Edmond that "eventually it was going to happen." The next day, Howard Davis and Chisem went to Edmond's workplace and Howard Davis told Edmond, "if anybody come talk to you ... you don't know nothing. Just tell them you need a lawyer."
¶30 At the trial, Earnest Davis testified that he had seen Chisem driving the same gray SUV on June 5, 2014, that he saw at the 16th Street and North Avenue area on June 6, 2014. He testified that on June 6, he saw the SUV drive slowly down the block until it got to the parking lot; then he saw and heard shooting coming from the SUV. He saw two people shooting from the open front and rear driver's side windows of the SUV. He saw his friend "over there, and he was holding his chest." Then, he told Edmond to back up because the people in the SUV were shooting at them, and the child was in the car.
¶31 Earnest Davis rode back with Edmond to the graduation party. He also testified that, after he had returned to the party, he saw Howard Davis and Chisem arrive there in the same SUV that he saw at the shooting. At the party, he saw Howard Davis taking off his shirt and sweating. He thought Howard Davis might have thrown the shirt in the garbage. Chisem then said, "These words never to be spoke of again."
¶32 Howard Davis states that Eddie Davis's denial that he saw Howard Davis on June 6, 2014, would contradict Edmond and Earnest Davis's testimony about what Howard Davis said and did at the time of the shooting. However, Detective Corbett's report states that Eddie Davis was in the rear passenger-side seat of the Suburban, and that he laid down after he was told shots were fired and did not sit up until the vehicle was in the area of 15th Street and Wright Street. Eddie Davis never stated that he saw anything or knew anything about the shooting.
¶33 Additionally, the report states that Eddie Davis "did not recall seeing" Howard Davis or Chisem "at any time on [June 6, 2014"]-the report does not state that Howard Davis denied seeing either man that day. Further, although Eddie Davis was at the graduation party, he left about fifteen minutes later. Moreover, the fact that Eddie Davis could not recall seeing Howard Davis that day does not impeach Edmond and Ernest Davis's testimony. Eddie Davis also told Corbett that he was drunk and used Ecstasy that day.
¶34 "[A] postconviction motion for relief requires more than conclusory allegations." See Allen , 274 Wis. 2d 568, ¶15. Howard Davis's motion merely provides Eddie Davis's name (the who), and the reason Howard Davis believes he is important (the why). But, as we point out, he is not important. Other than incorrectly stating that Eddie Davis would deny that he saw him on June 6, 2014, Howard Davis does not provide any facts that can be proven (the what, where, when, how) to support his conclusory statement that Eddie Davis does not recall seeing Howard Davis on June 6, 2014. See id. , ¶23. In other words, what was Eddie Davis doing that day, where was Eddie Davis, at what time. Further, how does that show that Howard Davis was not present at the shooting, that Howard Davis did not say or do what Edmond and Ernest Davis testified Howard Davis said and did at the shooting, and that Howard Davis did not return to the graduation party in the SUV. The motion also does not explain how Eddie Davis could have testified as a credible witness if, as he told the police, he used Ecstasy, was drunk that day, and laid down in the rear passenger-side seat of the Suburban when he was told shots had been fired.
¶35 Howard Davis's motion is missing the factual details that would be necessary to show that Eddie Davis was an important witness. As a matter of law, we conclude that Howard Davis's postconviction motion did not state sufficient facts regarding trial counsel's alleged deficiency in failing to call Eddie Davis as a witness that would have entitled Howard Davis to relief, if the facts were true. See id. , ¶14.
Howard Davis did not present sufficient facts about trial counsel's failure to adequately ask a witness about the details of her prior convictions
¶36 Howard Davis asserts that trial counsel was deficient in his failure to ask Vernicia Davis about the complete details of her five criminal convictions. WISCONSIN STAT. § 906.09 allows a party to present proof of prior criminal convictions to attack a witness's character for truthfulness. See Nicholas v. State , 49 Wis. 2d 683, 688, 183 N.W.2d 11 (1971).
¶37 The record establishes that during trial counsel's cross-examination, Vernicia Davis admitted that she had one criminal conviction. After an unrecorded sidebar conference, the trial court stated that there was a stipulation as to Vernicia Davis. Then, trial counsel asked her, "[I]sn't it right that instead of the one conviction, you've actually been convicted five times?" She answered, "No." The trial court then told the jury that it was an agreed fact that Vernicia Davis had been convicted of a crime or adjudicated delinquent five times. In its postconviction decision, the trial court found that Vernicia Davis "damaged her own credibility when she reasserted that she only had one prior conviction."
¶38 Vernicia Davis testified that both R.H. and Howard Davis each told her that R.H. had previously shot Howard Davis. Howard Davis argues that in light of her testimony, it was important to attack her credibility by using the details of her prior convictions. Citing Nicholas , Howard Davis asserts that when Vernicia Davis inaccurately stated her prior convictions, trial counsel could have brought out the correct and complete facts about her convictions. However, Nicholas holds that the only additional information that may be brought out, under the statute, is the name of the crime, not the details. See id. at 689, 691. Because the details of Vernicia Davis's prior convictions would not have been allowed, trial counsel's performance cannot be deemed ineffective. See State v. Jackson , 229 Wis. 2d 328, 344, 600 N.W.2d 39 (Ct. App. 1999).
¶39 Moreover, Howard Davis's motion does not explain how the names of those convictions would have further attacked Vernicia Davis's character for truthfulness, given that the jury was informed that she had five convictions. Howard Davis's motion does not provide the names of the crimes that she was convicted of or when she was convicted. Furthermore, it does not explain, the "why" and the "how" the names of those crimes would make a difference in his case, when Vernicia Davis's credibility as a witness had already been attacked-the jury knew that Vernicia Davis had tried to avoid admitting that she had five prior convictions.
¶40 Additionally, Howard Davis does not challenge the trial court's determination that Vernicia Davis damaged her own credibility. See WIS. STAT. § 805.17(2) (stating that,"[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses") (made applicable to criminal proceedings by WIS. STAT. § 972.11(1) ). The trial court's credibility determination further diminishes any arguments about how and why further questions about those five convictions would have been important.
¶41 Thus, we conclude that, as a matter of law, Howard Davis did not allege sufficient facts to entitle him to an evidentiary hearing regarding trial counsel's alleged deficiency in questioning Vernicia Davis about her prior convictions. See Allen , 274 Wis. 2d 568, ¶24.
Howard Davis did not present sufficient facts about trial counsel's failure to request the other acts jury instruction regarding the rap lyrics
¶42 Howard Davis also claims that trial counsel was deficient because he failed to request an other acts jury instruction, WIS JI-CRIMINAL 275, regarding the rap lyrics. He makes the conclusory assertion that "[t]his other act evidence was damaging to [him] in that it prejudiced him in the eyes of the jurors as being a person with a poor character trait for engaging in a violent gun crime."
¶43 This component of Howard Davis's ineffective assistance of counsel claim does not satisfy Allen 's pleading requirements. He provides no analysis of why the rap lyrics constitute evidence of a crime, wrong, or act by him that proved his character pursuant to WIS. STAT. § 904.04(2). Howard Davis merely states that the rap lyrics are other acts evidence that warranted the jury instruction, without reference to any facts or law to support that conclusion. Howard Davis's assertions are conclusory and speculative. We need not address undeveloped arguments that are not supported by legal authority. See State v. Pettit , 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).
¶44 Based on the foregoing, we conclude that, as a matter of law, Howard Davis did not allege sufficient facts to entitle him to an evidentiary hearing regarding trial counsel's alleged deficiency in failing to request the other acts jury instruction regarding the rap lyrics.
Howard Davis did not present sufficient facts about trial counsel's failure to request the "other acts" jury instruction regarding Howard Davis's failure to notify the police that R.H. shot him
¶45 In a short paragraph in his postconviction motion, Howard Davis asserts that trial counsel was ineffective because he did not request the other acts jury instruction, WIS JI-CRIMINAL 275, regarding testimony that Howard Davis failed to notify the police that R.H. shot him. He argues that the inference the jury most likely drew from the testimony was that he never reported R.H.'s crime to the police because he preferred "street justice." He states that this amounts to a prior bad act and an instruction to limit the prejudice from it was required.[6]
¶46 The trial court found that the shooting did not fit the definition of "other acts." See WIS. STAT. § 904.04(2). It further found that Howard Davis failed to explain why such a cautionary instruction would have been proper or needed or how trial counsel's failure to request the instruction had any impact on the outcome of the trial.
¶47 Further, Howard Davis asserts that the State introduced evidence that R.H. shot him and that he failed to report the shooting to the police to show that he had a motive for shooting R.H. Howard Davis proposed that the jury be instructed that if it found that he did not cooperate with the police investigation as to who shot him, it "should consider [the evidence] only on the issue of motive." However, as the trial court noted, Howard Davis's motion fails to show why his failure to report the shooting to the police was evidence of a crime, wrong, or act by Howard Davis that proved his character within the purview of WIS. STAT. § 904.04(2). In addition, the motion states no facts why a reasonable probability exists that, absent the error, the result of the trial would have been different. See Erickson , 227 Wis. 2d at 769. Howard Davis has not demonstrated that the trial court erred in rejecting this component of his ineffective assistance of counsel claim.
¶48 Therefore, we conclude that, as a matter of law, Howard Davis did not allege sufficient facts to entitle him to an evidentiary hearing regarding trial counsel's alleged deficiency regarding the other acts jury instruction.
Howard Davis did not present sufficient facts about trial counsel's failure to request a jury instruction regarding consideration received by a witness in exchange for testifying
¶49 Howard Davis also argues that trial counsel was ineffective because he failed to request a jury instruction, WIS JI-CRIMINAL 246, regarding concessions made to a witness. He asserts that the concession afforded to the witness, Nelson, was that his bail was reduced from $7500 to a signature bond in a pending case.
¶50 Although Howard Davis asserts that the bail reduction was a concession, in its decision denying Howard Davis's postconviction motion on this issue, the trial court found that "[t]he issue of concessions was explored at trial, and it was established that no promises or concessions were made to [Nelson] in exchange for his testimony." We conclude that the finding is supported by the record, which shows that both Nelson and Detective Graham, who debriefed him, testified that no consideration was provided to Nelson.
¶51 Based on the trial court's factual finding, there was no factual basis upon which trial counsel could request the jury instruction. Moreover, the trial court stated that if the instruction had been requested, it would not have been given. Trial counsel cannot be deemed ineffective for not pursuing an argument that would have failed. See Jackson , 229 Wis. 2d at 344.
¶52 We conclude that the trial court properly exercised its discretion in denying this component of Howard Davis's ineffective assistance of counsel claim without a hearing. See Wesley , 321 Wis. 2d 151, ¶23 (stating that if "the record conclusively demonstrates that the movant is not entitled to relief, the [trial] court has the discretion to ... deny a hearing").
Howard Davis did not present sufficient facts about trial counsel's failure to request a jury instruction regarding the missing recorded statement of Nelson
¶53 Howard Davis also argues that trial counsel was ineffective because he failed to request a jury instruction pursuant to WIS. STAT. § 971.23(7m) regarding the missing recorded statement of Nelson.[7] In relevant part, WIS. STAT. § 971.23(7m)(b) states " a court may ... advise the jury of any failure or refusal to disclose material or information required to be disclosed[.]"
¶54 The trial court found that the jury heard about the lost recording during Detective Graham's direct testimony and cross-examination. This finding is unchallenged and we conclude that it is also supported by the record. Graham testified that he recorded the interview, but he lost the device and was responsible for reimbursing the police department. The trial court also ruled that it "did not need to instruct the jury on a matter of evidence that was presented at trial; consequently, counsel was not ineffective for failing to request such an instruction because had he done so, the court would not have given it."
¶55 We agree. See Jackson , 229 Wis. 2d at 344. Because the record conclusively demonstrates that Howard Davis would not be entitled to relief based on trial counsel's failure to request a jury instruction on the missing recording, the trial court properly exercised its discretion in denying this component of Howard Davis's ineffective assistance of counsel claim. See Wesley , 321 Wis. 2d 151, ¶23.
III. The trial court properly found that Howard Davis had not presented a viable juror misconduct claim
¶56 Howard Davis also argues that the trial court erred when it denied his juror misconduct claim without a hearing. He asserts that a new trial is required because his mother was shot and killed before the trial, and at least one juror failed to disclose that he discussed the case with another person outside of court and took that information into the deliberation room. That is an overstatement of the facts.
¶57 The alleged juror misconduct is based on information juror A.L. gave to Howard Davis's investigator. A.L. stated that "[o]ne juror knew about the mother being shot" and that the juror "[k]new from his wife, but didn't tell us until after we reached our decision." From this, Howard Davis makes the speculative and conclusory assertion that it is "very possible" that the juror concluded that Howard Davis's mother was killed in retaliation for Howard Davis allegedly shooting and killing R.H.
¶58 The trial court denied the motion without a hearing, holding that it could not pass on its merits without more factually specific pleading.[8] The trial court also found that the information was not potentially prejudicial because it had nothing to do with Howard Davis, any of the facts, or any material issues in the case. The trial court found that Howard Davis's mother was not a witness in the case and was not a participant in any of the activities that were described in trial testimony. Therefore, the trial court concluded that the fact that Howard Davis's mother was shot and killed would have no bearing on the case.
¶59 We conclude that the trial court reasonably exercised its discretion in denying relief on the juror misconduct issue without a hearing because Howard Davis's allegations do not satisfy the five w's and one h test. See Allen , 274 Wis. 2d 568, ¶23. The motion does not state which juror (the who) received the information regarding Howard Davis's mother. It does not state precisely what was communicated from the wife to the unidentified juror (the what, where, and when). The motion also does not state precisely why the information was potentially prejudicial to Howard Davis. It also does not state how, given the nature and character of the State's case, the information was potentially prejudicial (the how). See Eison , 194 Wis. 2d at 172.
¶60 Moreover, the motion does not address why the juror would disregard the trial court's instructions limiting his consideration of the issues to the evidence presented at trial. Jurors are presumed to follow the court's instructions. See State v. Truax , 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Howard Davis's speculative and conclusory statement that it is "very possible" that the juror concluded that Howard Davis's mother was killed in retaliation for Howard Davis allegedly shooting and killing R.H. is insufficient to overcome that presumption.
¶61 Based on the foregoing, we conclude that the trial court properly exercised its discretion in denying Howard Davis's juror misconduct claim. No hearing was required because Howard Davis did not adequately plead a juror misconduct claim. See Eison , 194 Wis. 2d at 172.
CONCLUSION
¶62 For the foregoing reasons, we affirm.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

The Honorable Jeffrey A. Wagner presided over the trial and postconviction proceedings. Throughout this opinion, we refer to Judge Wagner as the trial court.

The State argues that on appeal Davis presents two components of his ineffective assistance of counsel claim somewhat differently than he presented them in his postconviction motion. We address this contention in our discussion below.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Although Davis asserts that trial counsel failed to investigate the alibi defense, his postconviction motion only asserted that trial counsel "failed to present an alibi defense." We will review only the allegations contained in the four corners of Davis's postconviction motion, not any allegations contained in his brief. See State v. Allen , 2004 WI 106, ¶27, 274 Wis. 2d 568, 682 N.W.2d 433.

Jarmel D. Chisem was a codefendant in this case.

The State asserts that this contention differs from that presented in Davis's postconviction motion although it was argued in Davis's postconviction reply brief. We conclude Davis's arguments in his motion were consistent.

Davis argues this issue as an alternative argument to his claim that the trial court applied the wrong legal standard to the police loss of the recording when it allowed Nelson to testify. However, Davis raises this claim for the first time on appeal. This court will not consider an issue raised for the first time on appeal. See Wirth v. Ehly , 93 Wis. 2d 433, 443-44, 287 N.W.2d 140 (1980), superseded on other grounds by statute, Wis. Stat. § 895.52.
Further, the record establishes that, immediately prior to Nelson testifying, trial counsel objected to his testimony because of the loss of his recorded statement. An unrecorded sidebar conference took place and the objection was denied. However, nothing in the record establishes that Davis argued the "good cause" standard at the sidebar. A party who objects to the admission of evidence at an unrecorded sidebar conference does so at his or her own peril. See State v. Munoz , 200 Wis. 2d 391, 402-04, 546 N.W.2d 570 (Ct. App. 1996). Thus, we conclude that Davis forfeited the issue by failing to establish that he properly raised it at trial.

The trial court noted that none of the other jurors Davis's investigator interviewed recalled being told about Davis's mother being killed.