COURT OF APPEALS
DECISION
DATED AND FILED

April 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1430-CR**

Cir. Ct. No. 2019CF413

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

CEDRIC LLEWELLYN PRICE,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: REBECCA L. PERSICK, Judge. *Affirmed*.

Before Gundrum, P.J., Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Cedric Llewellyn Price appeals the judgment convicting him of one count of repeated sexual assault of the same child and the order denying his postconviction motion. *See* WIS. STAT. § 948.025(1)(b) (2023-24).[1] We affirm.

## I. BACKGROUND

¶2 Price was charged following a forensic interview in which the victim, eight-year-old Sandra,[2] stated that Price made her perform oral sex on him approximately ten times during the past school year. According to the criminal complaint, Price had been dating Sandra's mother, and the most recent assault happened when Sandra's mother was at work and Price was babysitting Sandra.

¶3 Price pled not guilty and a three-day jury trial was held. Numerous witnesses testified on the State's behalf, including: Sandra's second-grade teacher, the school principal, a DHS social worker, a forensic investigator, Sandra, Sandra's mother, Price's roommate, and a detective who extracted data from Price's phone and discovered web addresses linked to child pornography. Price also testified on his own behalf. Following his conviction, Price filed a postconviction motion arguing that trial counsel was ineffective. That motion was denied and Price now appeals.

## II. DISCUSSION

¶4 On appeal, Price argues that his trial counsel was ineffective. To succeed on his ineffective-assistance-of-counsel claim, Price must show that trial

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym when referring to the victim in this case.

counsel's performance was deficient and that this deficient performance was prejudicial. *See State v. Mayo*, 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish deficient performance, Price must show facts from which a court could conclude that trial counsel's representation was below objective standards of reasonableness. *See State v. Wesley*, 2009 WI App 118, ¶23, 321 Wis. 2d 151, 772 N.W.2d 232. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See Strickland*, 466 U.S. at 694. The issues of performance and prejudice present mixed questions of fact and law. *See State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. Findings of historical fact will not be upset unless they are clearly erroneous, *see id.*, but the questions of whether counsel's performance was deficient or prejudicial are legal issues we review independently, *see State v. Krueger*, 2008 WI App 162, ¶7, 314 Wis. 2d 605, 762 N.W.2d 114. A court reviewing an allegation of ineffective assistance of counsel need not address both performance and prejudice if the defendant fails to make a sufficient showing on either one. *Strickland*, 466 U.S. at 697.

¶5     Price argues that trial counsel performed deficiently by soliciting and failing to object to testimony that he believes unlawfully vouched for Sandra's allegations. Specifically, he points to testimony by the social worker and the forensic investigator in which both witnesses testified to finding Sandra's allegations credible based on the details of her forensic interview—an interview that was recorded on video and played at trial.

¶6     Regarding the social worker's testimony, trial counsel asked: "You don't know if the events [described in the forensic interview] actually happened; is

that correct?" The social worker responded, "I certainly wasn't there during the moments that were disclosed, no." Defense counsel followed up with this line of questioning:

> [Trial counsel]: So you just took a report, and you heard a story about sexual abuse.
>
> [Social worker]: Correct.
>
> [Trial counsel]: But you don't know if it happened.
>
> [Social worker]: *Based on the interviews I am inclined to believe that it has happened.*
>
> [Trial counsel]: Not your belief. You don't know.
>
> [Social worker]: Correct.

(Emphasis added.)

¶7 Regarding the forensic investigator, Price points to unobjected-to testimony in which the investigator testified that the details Sandra provided during the forensic interview were "so strong that in my professional opinion [they] are credible details." The forensic investigator further testified that children in general almost never lie about sexual assault. She testified that it is "extremely cognitively demanding for a child to make up a narrative," that it is particularly demanding to make up a narrative as detailed as Sandra's allegations, and that it is even more demanding to maintain such a narrative over a period of time, as Sandra had done. The forensic investigator also testified that in scientific studies, only "between 1 and 6 percent" of child sexual assault allegations "have been found to be intentionally false" and that children "don't lie about penises being in their mouths." Additionally, the forensic investigator testified that in one study with a large sample size, the only instances of false allegations came from parents.

¶8     Price argues that trial counsel performed deficiently by inviting and failing to object to this testimony.  However, because we conclude below that Price was not prejudiced by trial counsel's alleged deficiencies, we need not determine whether Price performed deficiently with respect to testimony from the social worker and the forensic investigator.  *See **id.***

¶9     Regarding prejudice, Price argues that he was prejudiced by trial counsel's alleged deficiencies concerning the testimony of the social worker and the forensic investigator because "the case hinged on the credibility of the allegations [Sandra] raised during this interview."  Price notes that a pediatrician who examined Sandra for signs of abuse found none[3] and that Sandra's trial testimony was neither as lengthy nor as rich in detail as her forensic interview.  He argues that the jury must have relied upon the forensic interview, which it viewed a second time during deliberations, in finding him guilty.  Therefore, according to Price, the fact that both the social worker and forensic investigator commented on the credibility of Sandra's interview, gave it undue weight.

¶10     This court is not persuaded that Price was prejudiced by trial counsel's alleged deficiencies.  As we explain below, the details of the forensic interview were so vivid and comprehensive that jurors had ample reason to find Sandra credible regardless of any conclusions drawn by the social worker and/or the forensic investigator.  Moreover, Sandra's trial testimony and the testimony of several other witnesses at trial, corroborated Sandra's forensic interview.  Given the evidence presented at trial, trial counsel's alleged errors do not sufficiently undermine

---

[3] The pediatrician who evaluated Sandra also testified that "up to 95 percent of children who are evaluated for sexual abuse have just normal or nonspecific exams."

5

confidence in the trial's outcome and were not prejudicial. *See id.* at 694; *see also State v. Thiel*, 2003 WI 111, ¶20, 264 Wis. 2d 571, 665 N.W.2d 305.

¶11    We turn first to the hour-long forensic interview, which was played for the jury during the State's case and replayed during jury deliberations at the jury's request. During the interview, Sandra explained in her own words the difference between the truth and a lie, that it was important to tell the truth, and promised to tell the truth. Sandra went on to describe several instances in which Price sexually abused her. She vividly, comprehensively, and coherently described Price touching her breasts and vagina, instances where he coerced her to perform fellatio on him, and an instance in which he attempted intercourse with her. Sandra explained that Price normally abused her when people were not around or when Sandra slept over. Sandra also told the investigator that Price told Sandra not to tell anybody because he might get in trouble with her mom and the police. Even though this made her nervous, Sandra said she decided to tell her teacher because she did not like the behavior and wanted it to stop. Sandra further shared that one time, Price showed her a video on his phone of a young girl performing fellatio on a man Sandra described as the girl's father. Sandra said that Price showed her the video and then made her perform the act.

¶12    We turn next to Sandra's trial testimony. Contrary to what Price argues, Sandra's trial testimony was not only detailed but further corroborated what she told the forensic investigator. Sandra testified that "the situation" occurred when she and Price were alone and usually happened when her mother was at work. She explained that Price's "part between the legs" looked like a "hot dog" and was always used during the abuse. Similar to her forensic interview, Sandra testified that what came out of Price's penis was "white" and that it got into her mouth.

Likewise, Sandra testified that the assaults took place in Price's bedroom and that afterwards she would use the bathroom and clean up.

¶13  The testimony from other witnesses and Sandra's trial testimony also corroborate what Sandra told the forensic investigator and what she testified to at trial.  For example, Sandra's second-grade teacher testified that near the end of the school year, Sandra came to her saying that she needed to talk.  The teacher said that Sandra disclosed the abuse and broke down in tears when describing it.  Similarly, the principal, who took Sandra to his office to decompress after telling her teacher, testified that when he asked Sandra if everything was alright, Sandra "described [Price] putting his boy part into her mouth and being asked to do what I took as oral sex."

¶14  Sandra's mother testified that Price is her ex-boyfriend and that Sandra "looked at him as a father figure."  Sandra's mother began dating Price in 2015, and although their relationship was "on-and-off-again," sometimes Sandra would go over to Price's house alone.

¶15  Price's roommate testified that he moved in with Price about two months before Sandra told her teacher about the abuse and that there were a couple of times that Sandra was left alone with Price.  On one occasion, Price's roommate was returning from the grocery store when he saw Sandra leave Price's room.  Sandra looked distraught.  His roommate asked her if she was okay, and said, "if somebody did anything wrong to her, you know, I got her back."

¶16  In addition, the detective who reviewed Price's cell phone testified that he found several addresses for pornographic websites—including those having specific terms associated with "child pornography URLs" and "incestual types of depictions."  The detective explained:

> Within those URLs there are depictions of sexual intercourse on those websites between what is purported to be a father and daughter. And to me that would corroborate [Sandra's] statement that she was forced to view that type of video on the defendant's phone. The fact that those types of videos, or at least the indication of those types of videos, were found on his cell phone to me corroborates [Sandra's] statement that she was forced to view a video like that on his phone.

¶17 In sum, we have reviewed the Record in this case, including the above testimony, and conclude that there is no reasonable probability that, absent the alleged errors, the jury would have had a reasonable doubt as to Price's guilt. *See Strickland*, 466 U.S. at 695. Price thus has failed to demonstrate he was prejudiced by trial counsel's allegedly deficient performance. *See id.* at 694-95. Accordingly, we affirm the judgment of conviction and the order denying the postconviction motion.

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.